HON. MILO L. BENNETT,  
HON. LUKE P. POLAND, } ASSISTANT JUDGES.  
HON. ASA O. ALDIS,

---

JOHN RICHARDSON, *Administrator of the Estate of* JOHN W. MERRILL, *Appellee, v.* THE ESTATE OF JOHN W. MERRILL, ALDEN SPEAR AND OTHERS, *Appellants.*

*Administrators. Probate Court. Separate property of married women.*

The widow of an intestate petitioned the probate court to assign her so much out of the estate, as she was entitled to for her maintenance during its settlement. The probate court assigned her absolutely eight hundred dollars in money, and the use of the real estate and household furniture during the settlement of the estate. This assignment was not appealed from. *Held,* that under this decree the administrator was entitled to be allowed, in the settlement of his account, a charge of eight hundred dollars paid by him to the widow for her support.

Richardson, Administrator, *v.* Estate of Merrill et al.

*Held* also, that the fact that such assignment to the widow was an extravagant or unreasonable one, did not affect its validity, so long as it was unappealed from, and that it could not be revised in a collateral proceeding like the settlement of the administrator's account.

In the settlement of an administrator's account, he is entitled to be allowed for money paid by him in liquidation of a claim which could have been enforced against him either at law or in equity.

The wife of the intestate received during coverture certain personal property by gift and inheritance, and also acquired some money by her own personal earnings. The intestate always regarded all this as his wife's separate property and allowed her to treat and control it as such. The property was during coverture reduced to money, and all her money was then loaned and notes taken therefor in the husband's name, but they were always regarded and treated by him as her separate property, and she kept them in a separate parcel and room from those belonging to him. Shortly before the intestate's death, his wife being about to leave home temporarily, left her parcel of notes in her husband's care for safe keeping, and they were found among his papers by his administrator, and inventoried by him as belonging to the intestate's estate, the widow, however, claiming them as her own.

*Held,* that as against the heirs of the husband, these notes were in equity the sole property of the wife, and the administrator was therefore allowed, in the settlement of his account, to credit himself with their full amount, which he had realized and paid over to the widow.

APPEAL from the decree of the probate court settling the account of the administrator of John W. Merrill's estate. The appeal was taken by the heirs of the intestate. The cause was referred to a commissioner to take the account of the administrator, who reported the following facts :—

Nancy Merrill, the widow of the intestate, was married to him in 1836. In 1837 her father gave her four cows, fourteen sheep, and a horse, and told her to keep them as her own and for her own benefit. This gift was made to her with the knowledge and consent of her husband, who took the property into his possession and used, kept and supported it and its offspring precisely as he did his own stock, but both he and his wife always called and considered it her property. None of this stock was ever sold or let without the wife's consent, and all the rents and proceeds derived from it were considered to belong to her. She also at one time bought a calf which her husband kept in the same manner as her other stock, and when it was sold she had the

proceeds of it. Her father also gave her a note against a third person for one hundred twenty-five dollars, which was afterwards paid to her with interest. She also received from the division of her father's estate two hundred seventy-one dollars and twenty-five cents. Her husband also gave her small sums of money from time to time, and on one occasion fifty dollars, which he said was her portion of the proceeds of butter, pork or poultry, which he considered she was entitled to, as she had done the principal part of the work in raising and making this produce.

Mrs. Merrill kept her money and notes separate from her husband's, and in a different room, and he had nothing to do with them without her consent. The money was kept at interest as much as possible, and whenever either of them had any of the other's money, as they occasionally did, it was accurately accounted for. The notes and mortgages which were taken for the loans of her money, were always taken in Mr. Merrill's name, and her name did not appear in them. This was done by agreement between her and her husband, because they considered that it would be more convenient to institute suits for the collection of these loans in his name than in hers. Her husband assisted her in loaning her money whenever opportunities offered.

A short time before her husband's death, Mrs. Merrill went away from home, and she then delivered to him her bundle of notes to keep till she returned. This was her usual custom whenever she left home. While she was absent he was taken sick, and died soon after her return. His administrator found this bundle of notes among the papers of the intestate, but the widow then and ever since claimed them as her own. These notes all arose from loans of money, growing out of the property given to her by her father, and received and treated by her and her husband as her own property, as above mentioned, and amounted in the aggregate, including interest, to about one thousand dollars. The administrator returned all of them in his inventory of the intestate's property to the probate court, but he finally paid to the widow one thousand dollars for them, they being all perfectly good and secure, and credited himself with that amount in his account. The appellants objected to the allowance of this item, and also to the allowance of another item of eight hundred dollars cred-

ited to the administrator for cash paid the widow "for her support as per order or assignment of the probate court."

The record of the probate court in regard to this item showed that on the 9th of October, 1855, a petition was presented by the widow representing that the estate was solvent and had a large amount of personal property belonging to it, and praying the court to assign her so much out of it as she was entitled to for her maintenance during the settlement of the estate, according to her circumstances, to be by her selected from the household furniture and other articles named in the appraisers' report at their appraised value. The record also showed that on the 13th of November, 1855, the order of notice issued upon this petition of the widow, was returned complied with, that no one appeared to object to granting the prayer of the petition, and that the court thereupon set apart and assigned to the widow out of the estate of the intestate the sum of eight hundred dollars in money (and also the continuous use of the real estate and the use of the furniture towards her support during the settlement of the estate) to be held by her and her heirs, executors, administrators and assigns, to her and their own use forever.

Upon the foregoing facts the county court disallowed the item of one thousand dollars in the administrator's account, and held him chargeable for the amount of the notes claimed by the widow, and allowed the item of eight hundred dollars.

The appellants excepted to the allowance of the eight hundred dollar item, and the administrator excepted to the disallowance of the one thousand dollar item.

*C. W. Clarke*, for the appellant.

1. All the property given to Mrs. Merrill by her father, except the note against Spear, became her husband's property immediately upon its delivery. *Rawlins & Wife* v. *Rounds*, 27 Vt. 17 ; *Reeves Dom. Rel.* 1 ; 2 *Kent's Com.* 143 ; *Richardson* v. *Daggett*, 4 Vt. 336.

This note was afterwards paid by Spear, and the money paid upon it became immediately the husband's property.

The money given by Merrill to his wife from time to time, and the increase of the stock never became her property, since no

property can pass from the husband to the wife, by sale or gift, except through the intervention of trustees, even in equity. *Mews* v. *Mews,* 2 *Eng. L. and Eq.* 556; 2 *Kent's Com.* 129; *Washburn* v. *Hale,* 10 *Pick.* 429.

The act of loaning the money and taking security to himself was, both in law and equity, a complete reduction to possession by the husband. *Searing* v. *Searing,* 9 *Paige* 287; 2 *Kent's Com.* 141; *Kendrick* v. *Cleveland,* 2 Vt. 329.

The husband can not be regarded as a trustee for his wife in respect to this property and money, because he could have received his appointment as such only from his wife, and such an appointment being of the nature of a contract between them, is not recognized either in law or equity.

2. As to the item of eight hundred dollars, the record fails to show any notice at all of the hearing upon the widow's petition to the appellants. They were entitled to notice, and for want of it the assignment is void. The assignment by the probate court to the widow does not follow the petition.

It is also unreasonable.

*A. S. Little* and *Peck & Colby,* for the appellee.

1. The estate of Merrill is solvent. The creditors have no interest to be affected by this controversy. The question is between the widow and heirs, or more properly speaking, between the administrator and heirs, the administrator having submitted to and paid the claim of the widow. At law, the title to the property in question was in the intestate. He might have assumed the control and disposition of it. This he did not do, but treated it, at all times, as his wife's property. He waived all claim to it, and died without asserting any. The transaction amounted to a gift by the husband to the wife, which equity will support as against the heirs.

*Mead* v. *Mead,* 24 Vt. 601—Note; *Porter et al.* v. *Rutland Bank,* 19 Vt. 411; *Pinney* v. *Fellows et al.,* 16 Vt. 525; *Slanning* v. *Style,* 3 P. Wms, 335; *Lucas* v. *Lucas,* 1 Atk. 270, *and* 3 Atk. 393, 394; *Phelps* v. *Phelps,* 20 Pick. 556; *Stanwood* v. *Stanwood,* 17 Mass. 57; Roper's Husband and Wife, 2d Vol., 131, 136; Clancy's Rights of Women, pp. 274, 275—2d ed.; 2

Kent's Com. 163—3d ed.; 2 Story's Eq., sec. 1387; *U S.* v. *Cutts,* 1 Sumner 133; Herr's Appeal, 5 Watts & Serg't 494, and 6 Law Rep., Jan. No., 1854.

2. This claim for payment to the widow of the $1,000, for the notes, should have been allowed the administrator. He has done what chancery would have compelled him to do. The rule is that what the court would allow upon a suit, shall be good without suit. *Balsh* v. *Higham,* 2 P. Wms 453; Hill on Trustees, 571—1st ed. Executors and administrators hold the property in trust for those entitled. They are trustees, and their acts are to be supported so far as it can be done without violating any settled rules of law. The probate court has jurisdiction of this matter so far as relates to the administrator's account. The widow is not the party before the court. She is not asking relief. Her claim has been paid by the administrator, and the question is, was he justified in making the payment? If the property belonged to the widow, either at law or in equity, it was his duty to pay, and thus save the estate the expense and delay of a chancery suit. This court, on appeal from the probate court, has frequently exercised the jurisdiction now claimed for the probate court. That court has both a legal and equitable jurisdiction.

*Mead et al.* v. *Byington et al.,* 10 Vt. 116; *Clark,* Adm'r v. *Heirs of Clark,* 21 Vt. 490; *French* v. *Wisner,* 24 Vt. 402; *Jennison* v. *Hapgood,* 10 Pick.; *Herr's Appeal,* 5 Watts & Serg't 494; *Robinson* v. *Swift* Adm'r, 3 Vt. 283.

3. The item of $800 was properly allowed the administrator. Taking the whole record together, it is very evident that this sum was assigned to the widow for her support during the settlement of the estate. Whether the same was reasonable or not, is a question that cannot now be raised. No appeal was taken from the decision of the court making the assignment, and all parties are necessarily concluded.

REDFIELD CH. J. I. The first question made is in regard to the payment by the administrator of $800, in conformity with the decree of the probate court, unappealed from. There would seem to be no reason to question the regularity of this payment, unless upon one of two grounds.

1. That the payment was not in conformity with the decree.

2. That the decree itself is void.

1. In regard to the first ground there seems no reasonable question. For even if the administrator, in making his charge as a payment for the support of the widow, mistook the legal effect of the decree, it would be no sufficient ground of disallowing the payment. If the decree is a valid decree and so described in the plaintiff's account as to be identified, it is all that is requisite. This ground is not urged in argument. The counsel, in argument, rely wholly upon the second ground, and that the assignment is unreasonable, which, if it is any ground of objection to the decree, must be, as a reason why the decree should be held void.

2. But in regard to this second question, we are not prepared to say that there is any sufficient reason to hold the decree void. Its intrinsic extravagance, or unreasonableness, if that appeared to the greatest supposable extent, is no ground of holding the decree itself void, when it is brought in question in this collateral manner. If the appellants desired to raise any such question, they should have carried the case, by appeal, into the county court where it could have been revised upon its original merits in the same manner and to the same extent as in the probate court. But there being no appeal taken the decree became binding to the same extent as any other judgment.

The petition, which is for an assignment out of the personal estate of the deceased, " for maintenance during the settlement of the estate," should be taken into account, most unquestionably, in giving a construction to the decree. In this view, there could be no question that the decree is to be regarded as made for the purpose specified in the petition. And it is not possible for us to determine with absolute certainty that there is any manifest absurdity in the sum assigned. We are not sitting to revise the facts. There are, no doubt, cases where such an assignment might not seem unreasonable. But, as we have before said, this question cannot be revised here, in this mode. The decree must be held valid, and the payment of the amount, by the administrator, strictly within the line of his duty.

II. In regard to the payment of the $1000, the question must

turn upon the validity of the claim of the widow. That is, whether it was a claim which might have been enforced against the administrator, either at law or in equity. For if it was such a claim, it could not with any show of propriety be urged that the administrator is liable here to account, and to be charged with the very money which he paid in liquidation of a claim he could not have successfully resisted. The only remaining inquiry in the case then is, whether the widow was, in law, or in equity, the owner of this property in payment for which this sum was disbursed by the administrator ?

There would seem to be no question, from the facts reported, that she claimed to be the owner of this property and that this claim was always recognized by her husband, the intestate. It is very obvious, too, that the money arose from the money and other property given the widow by her father from time to time, during his life, and left her out of his estate at his decease, with the exception of such inconsiderable sums as the husband allowed her to take, as the result of her own earnings during the coverture, and incorporate with this separate estate of her own. We must then, we think, regard this fund as the separate property of the wife, chiefly arising from gifts and inheritance from her father, and all from that source and her own personal earnings during coverture, kept for her separate estate by the consent of her husband until his decease.

No question arises here in regard to creditors. How their interest might be affected by the husband allowing his wife, without the intervention of a trustee, to keep her own personal estate separate from his, and to do this through his agency and in his name during the coverture, it is not necessary to discuss here. It would seem from the case of *Porter* v. *the Bank of Rutland*, 19 Vt. 410, that creditors having knowledge of such estate being held by the husband, as the trustee in fact of his wife, although not in form a trust estate, will deprive them of all claim upon such estate, on account of the indebtedness of the husband. And it is there intimated that if this knowledge of the nature of the estate came to the creditor after the attachment, and before levy upon such estate, it will defeat the creditors' lien, or deprive him of the right to make the levy, which it is admitted he may

dr if ignorant of all trust for the wife. The same rule in regard to trust property, when the *cestui que trust* is not the wife of the trustee, was suggested if not adopted by this court, in a late case in Addison county. It involves probably no new principle in the law of trust ; and all who are familiar with the subject are aware that creditors and purchasers are always bound to respect counter equities, in third parties, which come to their knowledge before they have actually made advances or otherwise changed their position, in faith of the absolute property being in the person ostensibly holding it.

But the present case goes entirely clear of all questions of this character. The question of priority of right here arises between the wife and the heirs of the husband. There can be then no question here, that according to the general policy of the law of courts of equity, the right of the wife is paramount to that of the husband, in all her personal estate, in whatever form, so long as the property is kept distinct from that of the husband, and he recognizes the separate property of the wife therein.

The principle is distinctly recognized in the case of *Porter* v. *The Bank of Rutland,* that the " husband is competent to act as the trustee of the wife's separate property, as well as any other person, if duly appointed ;" and that he will be so regarded if he have in fact so conducted. It would seem that the present case comes very fully within the principle here laid down. This case is in fact a very much stronger case in favor of the wife's separate property than that of *Porter* v. *Bank of Rutland,* both in its general facts and the relation of the counter claimants. Here the appellants cannot, in any sense, claim to stand in any better light than the husband himself. So that their claim rests solely upon the fact of the husband having reduced the property to his own possession, as husband, and in his own personal right. And this fact, it seems to us, is distinctly and most unequivocally disproved by the entire testimony upon the point. There is not the shadow of ground for argument even, that the husband ever claimed to have taken possession of this property, in his own right as husband.

And the general principles of equity law seem most unequivocally to sustain the right of the wife to her separate property

whether acquired before or during the coverture, and in the latter case, whether the acquisition is the result of gift or inheritance, or is the product of her own personal earnings. In every such case she will hold against the husband and his heirs, and generally against his creditors, so long as the husband allows the wife to keep the property separate from the general mass of his own estate, although his own name may be used in the formal conduct of the business, unless in the case of creditors this may lead to a false credit on the part of the husband. 2 *Story's Eq. Ju.*, sec. 1387 ; 2 *Roper Husband & Wife*, 171–176. The case of *Slanning* v. *Style*, 3 *P. Wms.*, 334, 337, is a strong case in point, in regard to the separate earnings of the wife during the coverture. And where the wife upon her marriage reserves the right to dispose of her personal estate, and a subsequent concession to that effect by the husband has been regarded as equivalent, it was held that all the personal estate of which the wife died possessed was to be taken to be her separate estate, or the produce of it. *Gore* v. *Knight*, 2 Vt. 535.

In Sir Paul Neal's case cited in *Herbert* v. *Herbert*, Prec. in Ch. 44, as early as 1692, it was decided that if a " woman has pin money, or a separate maintenance settled upon her, and she by management or good housewifery saves money out of it, she may dispose of such money, so saved by her, or of any jewels, &c., bought with it, by writing in nature of a will, if she die before her husband, and shall have it herself, if she survive him ; and such money, jewels, &c., shall not be liable to the husband's debts."

So, too, if the wife, in the absence of the husband, carry on trade in milinery and support herself and children, the capital being furnished by her friends, although the business be carried on in the name of the husband, the avails will be regarded as the separate estate of the wife, and chancery will restrain the husband from interfering with it. *Cecil* v. *Juxon*, 1 Atk. 278. These principles have been followed and enforced by the courts of equity until the present day. And it may now be regarded, we think, as fully settled, that in a case like the present, if the husband, until his death, suffer the wife to maintain her separate estate, and so treat it himself, it must be so regarded after his death, and the personal representative is not called upon to take

notice of it, in the settlement of the husband's estate. And if by accident the securities are mixed with those of the husband in the same general deposit, but in a separate parcel, whereby they are put into the inventory of the husband's estate, as in the present case, it is nevertheless the duty of the administrator to restore them, or the avails of them, to the wife. That is what we understand was done in the present case.

Judgment of county court reversed.

Judgment on the account, allowing both the $800 and the $1000, to the administrator with costs, ordered to be certified to probate court.