## SPOONER AND WIFE v. REYNOLDS.

*Married Woman's Separate Property.　Reduction to Possession by the Husband.*

In trespass by husband and wife for property alleged to be the wife's, taken by defendant on attachment against the husband, it appeared that the property was bought by the husband by direction of the wife, and immediately taken onto a farm owned by the wife, whereon the husband and wife lived, and which the husband carried on, and there used by the wife's direction or permission, until attached, and that it was ultimately paid for with money derived from the wife's pension.　It also appeared that when the property was purchased, the husband gave the vendor a memorandum signed by himself, witnessing a lien thereon for part of the purchase-money, and that he afterwards gave his son a conditional bill of sale thereof, to secure payment of a loan to the wife.　The court charged, that if the husband bought the property as agent for the wife, and paid for it with her money, and did not afterwards, in the assertion of his marital rights, convert it to his own use, it was not liable to attachment on the husband's debts.　*Held*, no error.

TRESPASS, with a count in trover, for a wagon, parts of two harnesses, and a straw-cutter, alleged to be the separate property of Rhoda Spooner, the plaintiff wife.　Plea, the general issue, and special pleas, alleging that the defendant, as deputy sheriff, attached the property in question on a writ against the plaintiff Oliver H. Spooner, in favor of Terrill Brothers, and sold the same on execution issued on judgment rendered thereon.　Trial by jury, September Term, 1877, PIERPOINT, C. J., presiding.

It appeared that the property was attached and sold as alleged. It was conceded that the straw-cutter belonged to Oliver, and no question was made in regard to it.　It was also conceded that

the wagon and harnesses were purchased of E. H. Lane, the wagon and one harness on September 26, 1874, and the other harness on December 12, following, and that on each of those occasions, Oliver executed to said Lane a memorandum in writing for the purpose, as the plaintiffs' evidence tended to show, of giving said Lane a lien thereon for the purchase-money. Said memoranda acknowledged the receipt of the property, indebtedness therefor and a promise to pay the same, and continuance of title and control of the property in said Lane until paid for. Each memorandum was signed by said Oliver, and bore an indorsement of its receipt for record on the day of its date. The plaintiffs' evidence tended to show that Oliver took said property as soon as purchased, to the farm then and thereafter owned by said Rhoda, and carried on by said Oliver by his wife's permission and direction, whereon he and said Rhoda then and thereafter resided, where it was kept and used by him under direction and by permission of said Rhoda, and whence it was taken on attachment by defendant. It appeared that at the time of the purchase of said property, and ever thereafter, said Rhoda was and had been in receipt of a pension of $96 per year from the United States. The evidence also tended to show that on December 25, 1875, said Oliver executed a bill of sale of certain property, including the property in question, to Thomas D. Spooner, for the purpose of securing him for a loan of $130, previously made to said Rhoda at her request, but that said Rhoda did not authorize her husband to give said bill of sale, but knew it was given, and was willing it should be. Defendant's evidence tended to show that said Oliver, during the time he had lived on said farm, had bought and sold personal property kept there, in his own name. The defendant was called as a witness, and testified that when he attached the property, said Oliver told him he had owned it, but that it then belonged to his son Thomas, that he had given him a bill of sale of it that was on record, and that his wife was keeping it for him ; and that afterwards on the same occasion he had conversation with said Rhoda wherein she intimated that her son Thomas would be looking after the property, but made no claim to it herself. Defendant's evidence also tended to show that the

suit of Terrill Brothers was brought to recover for goods sold to said Oliver in the belief that the personal property on said farm belonged to him, and in reliance on the record of said liens and bills of sale. Plaintiffs' evidence further tended to show that said Oliver purchased the wagon and the first harness for his wife at her request and for her use, giving the lien thereon as aforesaid, and promising that she should pay therefor with her pension money, also at her request; that said Rhoda bought the other harness herself, said Oliver being present, promising to pay for it in like manner, and directing said Lane to make out a memorandum of lien; that neither of plaintiffs could read or write, that the plaintiff Rhoda depended upon said Lane to make the memorandum, and that her husband executed it by direction of said Lane ; that she had said Lane assist her in executing her pension vouchers, and had her pension checks sent to him ; that he cashed them for her, and took a certain sum out of the amount of each check toward paying for said property, until it was paid for in pursuance of her agreement with him at the time of the purchase thereof; that the balance of her pension money he paid over to her; that all of said property was paid for by her out of her pension money ; that she always claimed said property as her sole and separate property, in her own right, and controlled it as such; that her husband always regarded and treated it as her sole and separate property, and never made any claim to it, nor exercised any control over it ; that it was only by her permission that he used it in carrying on her farm or otherwise; that when defendant attached it, she told him it was hers; that said Oliver never told him that he owned it previous to the execution of the bill of sale to said Thomas, or at any other time, and that when he executed said bill of sale it was not read to him ; that he did not understand that it covered said wagon and harnesses, but that it covered only a certain cow belonging to him.

Said Lane was introduced as a witness by the plaintiffs, and testified that he had the husband sign the memorandum to make a complete instrument, as he was the man of the family ; that he wanted a lien on the property, and a paper to record, but that he relied on the pension for payment, if the wife lived.

Defendant requested the court to charge that if said Oliver bought the property, gave his own obligation therefor, and took, kept, and used it until attached, plaintiffs could not recover, even if the wife's pension money did pay for it, and even if the husband acted as the agent of the wife in using and controlling it; that if it should further appear that the property was attached to recover for goods sold to the husband in the belief that it was his property, and after examination of and in reliance on the records, and that the proceedings on which the property was sold, were regular, the plaintiffs could not recover; that if when the defendant attached said property the husband told him he had owned it, but had sold and transferred it to his son, and that his wife was keeping it for him, and if the wife told him she did not own it, but that her son did, plaintiffs would be estopped to set up title thereto. The defendant also requested the court to direct a verdict for him.

The court refused to charge as requested, but charged that if the husband bought the property on his own account, agreeing that his wife's pension money should pay for it, the property, when paid for, became his; but that if he purchased it as the agent of his wife, agreeing that it should be paid for out of his wife's pension money, it became the wife's when so paid for; that the giving of the papers to Lane as they were given, was proper, whether he purchased the property on his own account or for his wife, as they were papers simply showing that the property was not to "become Spooner's" until paid for; that if the husband purchased the property as the agent of his wife, it was not attachable on his debts, unless he afterwards took control of it and converted it to his own use, as he had a right to do; that to work such a conversion, it was necessary not merely that the property should remain on the farm, even if the husband had been sole owner of the farm and in exclusive possession, but that he should use it, claiming it as his own—claiming the right to use it independently of his wife, and exercise the control over it that an owner exercises over his own property; but that if the use the husband made of it was subordinate to the rights of the wife, the husband treating it as the wife's—the mere fact that she allowed him to use it occasionally was not sufficient to change its ownership.

As to the effect of the bill of sale to the son, the court charged as follows :

Did the husband upon that occasion reduce the property to possession, and turn it out as security for his own debts, as he would have a right to do ? Or was it a transaction by which the wife was virtually securing to the son the payment of the debt that she owed him for money she had borrowed ? Was the husband exercising his marital rights in claiming the property, and reducing it to possession, or was he simply executing the paper by which it passed into the hands of the son as security for the payment of a debt that the wife owed to the son for money that she borrowed ? Was it a simple process by which the wife was in fact securing that debt to the son, or was it a process by which the father was securing the debt to the son by appropriating the wife's property ? If it was the one, it was a reduction of the property that would make it subject to attachment for the debts of the husband. If it was the other, it would not be such a reduction to possession as would transfer the property to the husband.

To the refusal to charge as requested, and to the charge given, the defendant excepted.

Verdict for the plaintiffs for the value of the wagon and the two harnesses.

*L. F. Wilbur,* for the defendant.

This is an action at law, and is not affected by c. 71, Gen. Sts., nor by the Acts of 1867. The rights of the husband's creditors to attach the property in question are not affected by s. 4747, Rev. Sts. U. S., as the statute does not protect pension money from being taken on process after it has been transmitted to the pensioner ; nor does it protect property purchased with pension money. *Edson* v. *Trask,* 22 Vt. 18 ; *Kellogg* v. *Waite,* 12 Allen, 529 ; *Wooster* v. *Page,* 54 N. H. 125 ; s. c. 20 Am. Rep. 128, and cases there cited.

It was error to refuse the request to direct a verdict for defendant. The facts proved rendered the property attachable as the husband's. *Irons* v. *Reynolds,* 28 Ala. 305. The possession of the farm was the possession of the husband alone. *Holton* v. *Whitney,* 28 Vt. 448. Therefore the possession of the personal property thereon was the possession of the husband. *Rawlins* v.

*Rounds*, 27 Vt. 17. The property did not become the wife's by reason of the circumstances under which it was bought.

The charge as to the effect of the papers given to Lane was erroneous. The papers were complete contracts of sale by Lane and of purchase by Spooner. *Davis* v. *Bradley*, 24 Vt. 55.

Parol evidence was not admissible to show that the contracts were different from what they purported to be, or that the property was sold to the wife. *Noyes* v. *Canfield*, 27 Vt. 79; *Linsley* v. *Lovely*, 26 Vt. 123; *Reed* v. *Wood*, 9 Vt. 285; *Erwin* v. *Sanders*, 1 Cow. 250.

If the purchase be regarded as a purchase by the wife, it was still error to refuse to direct a verdict for defendant. At common law the wife's personal property in possession was absolutely in the husband, whether she had it in possession at the time of marriage or acquired it afterwards by gift, bequest, or purchase. It is not a matter of intention of the parties. *Rawlins* v. *Rounds, supra;* *Jordan* v. *Jordan*, 52 Me. 320; *Albee* v. *Carpenter*, 12 Cush. 382; *Gerry* v. *Gerry*, 11 Gray, 381; Reeve Dom. Rel. 1; *Parker* v. *Cushman*, 9 Vt. 320; *Hennessey* v. *White*, 2 Allen, 48; Schoul. Dom. Rel. 111.

In the charge on the question as to whether the property had been reduced by the husband to his possession, the court made no distinction between things personal and choses in action. In that there was error. Reeve Dom. Rel. 3, 4; Schoul. Dom. Rel. 111–114; *Parker* v. *Cushman*, 9 Vt. 320; 2 Kent Com. 114, 126; *Barber* v. *Slade*, 30 Vt. 191; *Rawlins* v. *Rounds, supra.*

The court charged that the jury might go outside of the bill of sale, to ascertain the object, purpose, and effect of it, and to show that the giving of it was a transaction of the wife's, and not necessarily a reduction of the property to the husband's possession. In that there was error. Schoul. Dom. Rel. 120; *Schouler* v. *Hoyle*, 5 Johns. Ch. 196; *Tritt* v. *Colwell*, 31 Penn. St. 228; *Alexander* v. *Chrittenden*, 4 Allen, 342; *Sherman* v. *Elder*, 1 Hilton, (N. Y.) 178, 476; *Hallowell* v. *Hortor*, 35 Penn. St. 375; *Irons* v. *Regnolds*, 23 Ala. 305.

The court should have charged as requested. *Ames* v. *Chew*, 5 Met. 320; *Wheeler* v. *Bowen*, 20 Pick. 567; *Glover* v. *Alcott*, 11

Mich. 470; *Rhoads* v. *Gordon*, 38 Penn. 277; *Irons* v. *Reynolds*, 28 Ala. 305; *Hicks* v. *Cram*, 17 Vt. 449; Bigelow Estop. 475–490; 43 Vt. 306; 34 Vt. 598; 26 Vt. 366; 36 Vt. 245; 39 Vt. 536.

*H. Ballard* and *R. H. Start*, for the plaintiff.

The property was the sole and separate property of the wife. The money with which it was purchased belonged to her in her own right, exempt from attachment, levy, and seizure. Gen. Sts. U. S. s. 4747. It accrued to her in her own right, and was not derived in any way from her husband. *Child* v. *Pearl*, 43 Vt. 224; *Richardson* v. *Merrill's Est.* 32 Vt. 28; *Cardell* v. *Ryder*, 35 Vt. 47; *Richardson* v. *Wait*, 39 Vt. 535; *Cardell* v. *Renfrew*, 33 Vt. 213; *White* v. *Waite*, 47 Vt. 508.

It was therefore not liable to attachment for the debts of the husband. *Child* v. *Pearl*, *supra*; *Richardson* v. *Wait*, *supra*; *Richardson* v. *Merrill*, *supra*; Reeve Dom. Rel. 540; Schoul. Dom. Rel. 282, n. 4.

Defendant claims that the debt accrued on the faith of the property, and that the property is therefore liable for the debt. But that would not render it liable. It is also claimed that the property, by being kept on the farm, and used by the husband, as it was, was in the husband's possession, and therefore liable to be taken on his debts. But it does not appear that the husband was in possession of the farm in the exercise of his marital rights, but simply lived with the wife, and carried it on by her permission and direction. He had no more possession than if he had been a hired man. The farm and the property were in the wife's possession and control. But such possession was not necessary to protect her rights to property of this kind. *Bowen* v. *Amsden*, 47 Vt. 569. But even if it could be said that the husband was in possession of the farm, the wife had the right to keep her property there, and permit him to use it, as in this case. Such a possession would not be a fraud upon the husband's creditors. *Barncord* v. *Kuhn*, 36 Penn. St. 383.

There is nothing to support the claim of an estoppel. *Hicks* v. *Cram*, 17 Vt. 449; *Shaw* v. *Beebe*, 35 Vt. 204; *Soper* v. *Frank*,

47 Vt. 368 ; *Wheelock* v. *Hardwick*, 48 Vt. 19 ; *Beebe* v. *Steel*, 2 Vt. 314 ; *Bates* v. *Cilley*, 47 Vt. 1.

The giving of the bill of sale to the son was not a reduction to possession, such as would render the property liable for the husband's debts. Schoul. Dom. Rel. 119, *et seq. ; Barron* v. *Barron*, 24 Vt. 375 ; *Perry* v. *Wheelock*, 49 Vt. 63 ; *White* v. *Waite*, 47 Vt. 508.

The opinion of the court was delivered by

ROYCE, J. The principal question in this case is, whether the plaintiff, Rhoda Spooner, had a title to the property sued for at the time it was taken by the defendant that she can maintain against the attaching creditors of her husband. No question is made but that the property was paid for with money that she received from the United States Government as a pensioner. The money she received as such pensioner, while it remained in her possession, was hers. It was not subject to the control of her husband, and could not be reached by his creditors. The only way in which her husband could acquire any legal interest in it, would be by the voluntary act of his wife in delivering it to him, or by obtaining such a possession of it in some other way as to give him the legal title by virtue of his marital right. It does not appear that the husband ever had any title to or interest in the money. If a married woman purchases personal property with money of her own, the property thus purchased is as much hers as the money was with which she purchased it, and can no more be treated or regarded as the property of the husband by his creditors than the money could be with which it was purchased. *Richardson* v. *Waite*, 39 Vt. 535 ; *Richardson* v. *Merrill's Estate*, 32 Vt. 27.

In the case last cited it was held that the general principles of equity law seem most unequivocally to sustain the right of the wife to her separate property, whether acquired before or during coverture ; and in the latter case, whether the acquisition is the result of gift or inheritance, or is the product of her own personal earnings. And in every such case she will hold against the husband and his heirs, and generally against his creditors. The way

in which the money with which the property that is the subject-matter of controversy in this suit was acquired, was in the nature of a gift ; and it is provided by s. 4747 of the Rev. Sts. of the United States, that money to which a pensioner is entitled shall inure wholly to the benefit of the pensioner.

Where a married woman has a clear equitable title to property, a court of law will not compel her to resort to a court of equity, unless the controversy is of such a character that by the rules of practice and procedure in the court of law, full and ample remedies cannot be accorded to the parties litigant in such court.

We think the theory upon which the case was tried was the true one, and there was no error in the rulings and instructions of the court.

Judgment affirmed.