RACHEL M. CARDELL *v.* GEORGE W. RYDER, ALVIN MCINTYRE
AND JEPTHA HOWARD.

[IN CHANCERY.]

*Separate Property of Married Woman.     Chancery.     Husband and
Wife.*

An agreement made during coverture between husband and wife that certain
personal property or funds belonging to him shall become her separate
property, will be enforced in equity, if it is so far carried into effect as to
separate the property or fund from the residue of the husband's estate, and
place it in the name and exclusive control of the wife.

BILL IN CHANCERY.   The facts in this case appear sufficiently
in the opinion of the court.   The chancellor, at the January
Term, 1861, in Orange county, *pro forma*, dismissed the bill,
from which decree the oratrix appealed.

*P. T. Washburn,* for the oratrix.

*P. Perrin* and *C. W. Clarke,* for the defendants.

PECK, J.   This is a bill to foreclose a mortgage executed by
the defendant McIntyre and others to the defendant George W.
Ryder, the mortgagors having sold and conveyed the premises
to the defendant Howard since the date of the mortgage.   So
far as it relates to the defendants McIntyre and Howard, the bill
is substantially a bill to foreclose the mortgage.   The defendant
Ryder is made a party on the ground that he denies the right of
the oratrix to the notes and mortgage, and has a bill pending to
foreclose the mortgage in his own name and for his own use and
benefit, commenced before the commencement of this suit.   The
only question is whether the oratrix, or the defendant Ryder, has
the better equitable right to the notes and mortgage.

It appears that the oratrix was married to the defendant Ryder
in 1842, and that at the March Term of the Supreme Court in
Orange county 1855 she, on her petition, obtained a bill of divorce.

The oratrix in her bill and proofs claims title to the notes and
mortgage on two grounds ; first, that she had at the time of her

marriage with Ryder about two hundred dollars, and also some other little personal property, and that it was agreed and always understood between her and Ryder that that fund should be held by her or secured to her for her separate use, and that when the premises in question were bought by them in 1849 this went in part payment, and when the premises were sold in 1852 for $1,000 or $1050 to Mr. McIntyre, and these notes and this mortgage taken for $377 of the price, it was agreed she should have them as her separate property, and that they were then delivered to her for that purpose, and that she has kept them ever since; secondly, she claims that when the bill of divorce was granted she had a petition for alimony pending, and that it was agreed that she should have these notes and mortgage, and certain other property in her possession, in full of her claim for alimony, and that the petition for alimony was thereupon by agreement withdrawn.

We find that she had such property at the time of her marriage, and that it was applied towards the payment of this farm when Ryder bought it, and that when it was sold it was agreed between her and Ryder that she should have the notes and mortgage in question, and that the notes when executed were delivered directly to the oratrix for that purpose by the consent and agreement of Ryder. We further find that there was such agreement and understanding between them that her property should be kept separate or be secured to her ultimate use, and that it was so kept separate a portion of the time prior to Ryder's purchase of this farm. At one time it appears it existed in promissory notes against one Ruggles payable to the oratrix. It is true that when Ruggles paid the money it went into the hands of Ryder, but at about the same time he executed a note payable to Ruggles for the use and benefit of the oratrix, and exhibited it to Ruggles; and whether that note was delivered to the oratrix and kept by her till it was lost or taken from her without her knowledge or consent by Ryder, as her evidence tends to prove, or whether it was retained by Ryder as he claims in his testimony, and executed, as he claims, to entitle his wife to that amount out of his estate in case she survived him, it is evidence of a recognition on his part of some understanding that

her property should be preserved in some form to her use. But it is claimed by the defendants' counsel that this agreement in relation to her separate property does not support any allegation in the bill. But it is alleged substantially that she had such property, that it was appropriated to the purchase of this farm, and that in consideration of this and that she would sign the deed, it was agreed at the time the farm was sold by Ryder, that she should have these notes, and that they were then delivered to her in pursuance of that agreement. The allegations of the bill are sufficient to let in this proof as evidence, if not as a distinct ground of relief. It is evidence confirming the direct evidence as to the agreement made at the time the notes in question were given.

It is not necessary to show an *ante-nuptial* agreement. An agreement made during coverture may be enforced in equity even in case of a gift from the husband to the wife, if it is so far carried into effect as to separate the property from the residue of the husband's estate and place it in the name or exclusive control of the wife. Nor is it material, except as matter of evidence, that the funds of the oratrix have at times passed into the hands of her husband and become mingled with his property, since by the agreement made at the time these notes were executed, perfected by a delivery of the notes to her, her property became again separated. We think upon this ground, if there was nothing further in the case, the equitable right of the oratrix to the notes is made out.

The plaintiff claims, and attempts to show, that by the agreement for alimony she was to have these notes and mortgage, and all the other notes and property in her possession. The defendant concedes, and the proof shows, that she was to have $400, and Mr. Perrin testified, (and thus far we can safely find,) that the agreement was that the $400 was to be paid in cash or notes ; but the defendant insists that no particular notes were specified. Taking this to be the contract as the defendant claims it, since the $400 has not been paid, nor any subsequent agreement entered into specifying any particular notes she shall take, there is nothing in this contract that is inconsistent with the oratrix's right to enforce her pre-existing equity in these

4

notes and mortgage derived from the agreement and delivery to her at the time of their execution. Nor do we find any such tender of performance by Ryder of this contract in relation to alimony, and breach on the part of the oratrix, as to defeat her right which she previously acquired to the notes and mortgage in question, even assuming, as is claimed by Ryder, that on the payment of the $400 she was to give up all the notes in her possession; especially as by allowing her to hold and appropriate to her own use the notes in suit, it satisfies so much of the $400; for it is not claimed, nor is such the fact, that she was to have the $400 in addition to these notes and mortgage.

Whether the evidence would warrant us in finding that the agreement in relation to alimony was as stated in Mr. Perrin's letter of April 11th, 1856, that is, that she was to have $400 *out of the notes in her hands*, they giving her a lien on these notes by that agreement on which to rest the claim of the oratrix, it is not necessary to say, since it is sufficient that there is nothing in that agreement to deprive the oratrix of her original equity and title to these notes.

The decree of the court of chancery, which was a *pro forma* decree dismissing the bill, is reversed, and a decree is to be entered for the oratrix to the effect that the notes and mortgage on which the bill is founded are her sole property, free from all claim on the part of the defendant Ryder; that the oratrix have a decree of foreclosure against the other defendants without costs, and as to Ryder, a decree against him for her costs; and that he be perpetually enjoined from further prosecuting his bill in chancery on said notes and mortgage, or in any way collecting or attempting to collect the same, and that his said bill of foreclosure pending in the court of chancery be discontinued with costs.