# ORLEANS COUNTY,

[ Continued from *ante*, page 63.]

---

SIMEON ALBEE, *Administrator of* SARAH COLE *v.* EBENEZER COLE.

### *Husband and Wife.   Trover.   Conversion.*

*It seems* that the administrator of a *feme covert* succeeds to her rights in respect to her property, but in enforcing those rights, is not restricted in his remedy to the very remedy to which the intestate was limited by reason of the personal disability of coverture, whereby she is legally incapacitated to sue her husband, at law.

An absolute refusal by a party to give up a note on demand, precludes him from setting up on trial the excuse that he had not a reasonable time and opportunity afforded him to comply with the demand, though he was away from home at the time of the demand and had not the note with him.

Where a man makes an ante-nuptial contract by which his wife is to retain her entire interest and control of her property, and after marriage receives notes which she holds, as trustee or agent for her, and then appropriates them to his own use and benefit, with the intent and purpose of depriving her of her property, it is *held* to constitute a conversion of her property in fact and in law.

THIS was an action of trover for several promissory notes. Plea, general issue and trial by jury at the December Term, 1864, POLAND, Ch. J., presiding. The plaintiff's evidence tended to prove the following facts : Sarah Cole, the plaintiff's intestate, was the widow of Elijah Albee, of Morgan, who died several years since leaving a considerable estate, out of which the said Sarah received, as his widow, the sum of three thousand dollars all in well secured notes. These notes were placed by her in the hands of her son, Lewis Albee, as her trustee or agent, and he managed the same for her and paid her the interest thereon as he collected it. Mrs. Albee finally mar-

ried the defendant, a widower, who had about the same amount of
property as Mrs Albee, and each was about seventy-five years old.

The plaintiff's evidence tended to prove that prior to said mar-
riage, and in anticipation of it, it was agreed that the defendant
was to retain all his property, and if he died before her, she was to
claim none of it, and it was all to go to his children, and that she
was to keep hers and have the whole control of the same and that
her notes were to remain in her son's hands as before, and he was to
pay her the interest the same as he had done and that her property
was to go to her children, and he was to have no control whatever
over it.   This agreement was wholly by parol.

After said marriage, Lewis Albee continued to hold and manage
his mother's notes until sometime in the summer of 1861, when
some dissatisfaction arose because Lewis did not collect the interest
on some of her notes and pay the same over to her ; and Lewis was
called upon to surrender the notes to his mother, which he did, and
the same went immediately into the hands of the defendant.

These notes so surrendered up by Lewis, and passed into the
defendant's hands, are the same described in the plaintiff's declara-
tion, except the one last described against Daniel Buchanan, and
there was a note against Buchanan, for which the note described in
the declaration was afterwards substituted.   The plaintiff's evidence
tended to prove that when said notes were thus placed in the defend-
ant's hands, he received them to hold and manage as the trustee or
agent of his wife, in the same manner her son Lewis had held
them, and that he was to have no greater personal right or interest
in them than he had before.   That immediately upon getting posses-
sion of said notes, the defendant placed them in the hands of
one Porter Hinman, pretending that the same had been sold and
transferred to him, and that Hinman immediately went about to the
various signers of the notes, and procured the same to be paid, or
got the notes changed and made payable to the defendant.   That the
defendant purchased a piece of land, for which he paid with some of
these notes, and had the land conveyed to himself.   It was conceded
by the defendant that prior to the death of his wife he had converted
to his own use and benefit all the notes thus put into his hands,

except the note against Buchanan. Buchanan married a daughter of Mrs. Cole, and was called upon with the others to give a new note payable to the defendant, but he refused to do so, and made a new note payable to Mrs. Cole, which note was unpaid when Mrs. Cole died, and was in the defendant's hands when this suit was brought, and is the last note described in the plaintiff's declaration. The plaintiff testified that the day before he commenced this suit he met the defendant at Derby Center, five miles from the defendant's house in Charleston, informed him he had been appointed administrator of Mrs. Cole, and demanded of the defendant all the notes that Mrs. Cole brought to him, and all that belonged to her. The defendant replied that if she left any property, the plaintiff must look it up, that he should not produce any.

The defendant's evidence tended to prove that prior to the marriage between him and Mrs. Albee there was no agreement whatever that she should retain her property to herself, or have control of the same ; and that at the time said notes were surrendered up by Lewis Albee, and delivered over to the defendant by Mrs. Cole, he received them not as trustee or agent, to hold and manage the same for her, but that she gave them to him to be his absolute property.

The court charged the jury that if there was no agreement prior to the marriage, that Mrs. Cole was to retain the full and exclusive right to, and power of control over, her property, then the plaintiff could not recover for any of the notes converted by the defendant before the death of his wife, that in the absence of such ante-nuptial agreement, the defendant had the legal right to convert the notes to his own use. That if there was such an agreement made before the marriage, still if when the notes went into the defendant's hands, he received them not as her agent and trustee, but as his own by gift from his wife, then all the notes became his absolutely, and the action could not be maintained at all. But if the jury found that the ante-nuptial agreement was proved, and that there was no subsequent gift to the defendant, but that when the defendant received the notes he received them to hold as agent or trustee for the benefit of his wife and with no personal right or interest in them, that if he sold them, or converted them into notes payable to himself, for the purpose of

appropriating them to himself and depriving his wife and her children of them, it would be a conversion of them, for which trover would lie; that any proper change of the *form of the notes*, or from one debtor to another in the proper furtherance of his agency in managing them for his wife would not be a conversion; that as to the Buchanan note there had been no conversion of it unless by refusing to surrender it to the plaintiff when demanded, that if demand was made on the defendant when away from home without having the note with him, he was entitled to a reasonable time within which to procure the note and deliver it before he could be sued, but that if on demand made he absolutely refused to deliver it, he could not afterwards insist that he was not allowed sufficient time to procure and deliver it.

The defendant excepted to the charge so far as the jury were instructed what would amount to a conversion by the defendant, and also on the effect of a demand and refusal.

On the trial the defendant was offered as a witness on his own behalf, but not to testify to any facts which transpired after the plaintiff was appointed administrator. The plaintiff objected to his admission and he was excluded, to which the defendant excepted. Verdict for the plaintiff.

*Geo. N. Dale*, for the defendant.

*Edwards & Dickerman* and *B. H. Steele*, for the plaintiff.

The opinion of the court was delivered by

PECK, J. This case was argued at the last term of this court and held for consideration. The action is trover for certain promissory notes belonging, as the plaintiff claims, to the intestate. It appears that the notes previous to and at the time of the marriage between the defendant and the intestate, were her property, and that they were in the possession of her son Lewis Albee, who continued to hold and manage them for her for some time after the marriage. The jury under the charge of the court must have found that there was an ante-nuptial contract by which the intestate was to retain the entire

interest and control of her property, and that the defendant was to have no interest in, or control over it. The jury must have also found that when the notes afterwards came into the possession of the defendant, he received them to hold as agent or trustee for the benefit of his wife, the intestate, without any personal interest or right in the defendant to the notes. It was conceded by the defendant that prior to the death of the intestate he had converted to his own use and benefit all the notes thus put into his hands except the note against Buchanan. The jury have found that the defendant thus converted them with the intent and purpose of appropriating them to his own use and depriving his wife and her children of the property. This act, done with such intent and purpose, the court told the jury would be a conversion for which trover would lie. The exceptions state that the defendant excepted to the charge so far as the jury were instructed what would amount to a conversion by the defendant.

The principal questions litigated before the jury were, whether there was such ante-nuptial contract; and whether when the defendant received the notes, some time after the marriage, he received them as the agent of his wife to be held for her use and benefit, or whether she intentionally surrendered all her right and interest in the notes to him. The jury having found against the defendant on both questions, the result is that the husband had abandoned and surrendered to his wife his marital rights as to this property, or rather what would have been his right had there been no ante-nuptial agreement; and hence the right of the wife to this property as her sole and separate property, was perfect and absolute as against her husband. The defendant therefore had no right to collect and appropriate the notes to his own private use with the intent and purpose of defeating the testator of this right, and depriving her of the property. Such act was certainly a conversion in fact, it was wrongful and unauthorised, and therefore was a conversion in law. The right of the testator to this property was no less perfect, and the act of the defendant no less wrongful and flagrant, than if the marriage relation had not existed. It is insisted in this court by the defendant's counsel, that the only remedy, if any, is in chancery.

It is true that the testator in her lifetime could not have maintained at law an action of trover against the defendant. But this was not from any want of right or title in the property, nor because the act of the defendant was not a wrongful and unlawful conversion of her property, nor because she was without remedy to redress the grievance. It was by reason of a personal disability a wife is under, incapacitating her to sue her husband, at law. Her remedy would have been ample in a court of equity in her lifetime. Her administrator succeeds to all her rights, but we are not prepared to hold that, in enforcing those rights, he is necessarily restricted in his remedy, to the very remedy to which the intestate was limited by reason of the personal disability of coverture, whereby she is legally incapacitated to sue her husband at law. It is true the administrator represents the intestate and succeeds to her rights, but he is not under her disability. So far as the disability arising from the coverture of the intestate affected her rights, or the substantial merits of her claim, her representative must be affected; but beyond that there does not seem to be any sound reason why that disability of the testator, which was merely personal, and only affected the mode of her relief, should embarrass or control her representative in the form of remedy. If he is not thus restricted, then, although the intestate could not have recovered of her husband at law in assumpsit for the money he collected and wrongfully appropriated to his use, yet her administrator might resort to that remedy. For the same reason it would seem that he might maintain this action of trover for the notes, since the act complained of was a positive tort, an actual, unlawful, injurious conversion of the testator's property.

But it is not necessary to decide this question, as it is not raised by the bill of exceptions. In trover there are two principal questions, one relating to the right of the plaintiff to the property, the other as to the wrongful act of the defendant, technically called the conversion. The question whether the right or title of the plaintiff was such as could be enforced at law, or such as would enable him to maintain trover, if a conversion was proved, does not appear to have been raised in the county court. The only exception is to the charge as to what would constitute a conversion. The

question of law, whether the right of the plaintiff was such as would entitle him to maintain trover against a *tort feasor.* or whether it was exclusively of equity jurisdiction, was not raised and does not come within the exception taken. On that point the facts only were disputed. If the facts which the court required the jury to find in order to constitute a conversion, had shown a right in the defendant thus to appropriate the property to his own use, the charge would be erroneous, and the defendant could avail himself of the error under this exception; as in that case the act of the defendant would not be wrongful and therefore not a conversion. But the facts found by the jury show the contrary. This exception must be overruled.

In relation to the note against Buchanan, it appears that the only act the defendant had done was to surrender up the note he received of his wife against Buchanan, and take another for the amount payable to his wife, and this he still held in his possession. The court told the jury there had been no conversion of this note unless by refusing to surrender it to the plaintiff when demanded.

The evidence in relation to a demand and refusal was, that the plaintiff, the day before he commenced this suit, met the defendant at Derby Center, five miles from the defendant's residence in Charleston, informed him he had been appointed administrator of Mrs. Cole, and demanded of the defendant all the notes that Mrs. Cole brought to him, and all that belonged to her, and that the defendant replied that if she left any property the plaintiff must look it up, that he should not produce any. This demand by the plaintiff and absolute refusal by the defendant, unaccompanied by any intimation on the part of the defendant that he would ever comply with the demand, precludes the defendant from setting up on trial the excuse that he had not reasonable time and opportunity afforded him to comply with the demand before the commencement of the suit, and fully justifies the charge of the court on this point.

The exception to the exclusion of the defendant as a witness is not insisted on by the defendant's counsel.

Judgment affirmed.