JULIA CHILD v. HARMON H. PEARL.

*Husband and Wife. Ante Nuptial Contracts. Statute of Frauds. Trover.*

In several Vermont cases the *legal* title of the wife is recognized in a court of law, as existing against the effect of coverture, by reason of an understanding between the husband and wife after marriage, rather implied than expressed, that certain property, which would otherwise belong to the husband, should remain and be the sole and separate property of the wife.

A parol agreement by the husband made before marriage, that property belonging to his wife while *sole* should remain hers, would operate to prevent the title being divested from her by the operation of law on the taking place of the marriage; and she being divorced may maintain trover for it against a purchaser from the husband.

The statute of frauds is no shield for the defendant, because the action is based on a title that was always in the plaintiff, not on an executory *ante-nuptial* contract. The agreement became executed and its effect realized at once upon the fact of marriage, in that the right of property was not transferred to the husband by such marriage.

TROVER for a mare, and two colts of the mare. The action was commenced February 8th, 1868, and tried by the court at August term, Grand Isle county, upon the general issue, STEELE, J., presiding. In 1851, the plaintiff was married to Francis Child. He died July 9th, 1864. On the 14th of February, 1865, she was again married. In January, 1868, she was divorced from her second husband, Abner B. White, and resumed her name of Julia Child. The mare in question had been called the plaintiff's from a colt. She was her favorite horse, being safe for her to drive and at the same time remarkable for her speed. In 1862, Francis Child, who was in declining health from the disease of which he died two years after, told his wife he wished the mare confirmed as her property, and called two persons to witness that he had given the mare and her increase to his wife to hold and possess as her own property. The gift was intended and understood as a gift to her separate use, and thereafter, during Mr. Child's life, she was treated and considered as the property of Mrs. Child, and after Mr. Child's death, Mrs. Child being administratrix upon his estate, the mare was not inventoried with the estate, but was claimed and held by Mrs. Child as her own. Shortly before her second marriage, and in contemplation of it, Mrs. Child told Mr.

White, to whom she was expecting to be married, that the mare and her increase had been given to her by her first husband, and that it was a sacred gift, and she wished it to be agreed that they were to remain hers and not in any way to become his or under his control after marriage, to which he assented. Both these transactions, the gift and the ante-nuptial contract, were in parol, and defendant seasonably objected to any proof of them on that account, and also because otherwise invalid, irrelevant, and immaterial. After the second marriage, the said White sold other property which plaintiff received from her husband's estate, and finally, in Dec. 1866, sold the defendan tthis mare and a colt by her side. The sale of this mare and colt was without the knowledge and against the expressed wish of the plaintiff. At that time the plaintiff and White were living together. The defendant knew this mare was property owned by Mrs. Child before marriage, but did not know that it stood any different from other property she had owned before marriage. In the sales of other property White had acted in his own right as husband, and nothing appeared from which the court could find that he was in fact or ostensibly the agent of his wife in the sale of this mare and colt. There was no evidence that the wife had given her husband any leave or permission to do anything with her property more than he had a right to do by law. After defendant bought the mare and colt, she had another colt with which she was with foal when he bought her ; but the plaintiff waived claim for this colt.

The court found that the value of said mare and colt by her side, in December 1866, was two hundred and fifty dollars. The defendant seasonably objected to the plaintiff's recovery because the said gift and ante-nuptial contract was within the statute of frauds, and because the same was without consideration and invalid. Upon the foregoing facts the court rendered judgment for the plaintiff, for $250, and interest since December 15th, 1866, and costs, to all of which the defendant excepted.

*Edson & Rand* and *Giles Harrington,* for the defendant.

The most that can be claimed by plaintiff is, that the mare in question was the property of the plaintiff (derived by absolute

29

gift from her first husband) at the time of her marriage with White. And for the purpose of defeating White of any interest or control of said mare, which he might derive from his contemplated marriage, the plaintiff sets up a parol ante-nuptial contract to defeat the defendant's title to the mare and colt, derived from his purchase from White after his marriage with plaintiff, for a valuable consideration. If that can be done, then it repeals the statute of frauds. We cannot find that the question has been decided in this State.

This case is distinguished from the other Vermont cases reported, in that, in this case, the equities are equal ; it is between the wife as owner of the property, and a purchaser from the husband for a full consideration without notice. The English Courts early made a distinction as to a purchase for a valuable consideration, and continue the rule to the present time. 2d vol. Roper, 154, margin.

It was held in *Montacute* v. *Maxwell*, 1 Peere Williams, 618, that the statute was well plead to a parol ante-nuptial contract, and that was a case butween husband and wife, and the equity was with the wife. 1 P. Williams, 770 ; U. S. D., No. 17, p. 292, S. 158 ; *Potts* v. *Merritt*, 14 B. Mon., 406 Ky ; Brown on Frauds, §§ 439, 440.

The defendant in this case is a *bona fide* purchaser for a valuable consideration and without notice, and the court will not follow this property into his hands and treat him as a trustee.

In Story Eq. Jur., vol. 2, sec. 976, the principle is thus stated : " Equity will follow the legal estate, and decree the person vested, trustee, if *not* a *bona fide* purchaser for a valuable consideration without notice." *Bassett* v. *Nosworthy*, Lead. Cases in Eq., vol. 2, p. 49, and notes; citing 2 Myline & Craig, 195, 2 Story Eq., 1264 ; *Oliver et al.* v. *Piatt*, 3 How. U. S., 333, 401 ; *Finch* v. *Earl of Winchelsea*, 1 P. Williams, 278–279.

*H. C. Adams* and *H. S. Royce*, for the plaintiff.

It is insisted that the gift of the mare in question to the plaintiff together with the fact that the property was not inventoried as a part of Mr. Child's estate, but was claimed and held by the

plaintiff, and treated as her property, is sufficient evidence of title. A gift of personal property by a husband to his wife *during coverture* will be upheld excepting as against the creditors of the husband. *Borst et ux.* v. *Spelman et al.*, 4 Com. N. Y., 284 ; *Shirley* v. *Shirley*, 9 Paige, 363 ; *Underhill* v. *Morgan*, 33 Conn., 105 ; *Gage* v. *Dauchy*, 28 Barb., 622 ; *Williams* v. *Deming*, 26 Conn., 226.

An ante-nuptial agreement, whether by parol or in writing, which provides that personal property owned by the wife shall, after the contemplated marriage, remain her sole and separate property, is valid, and will be sustained as against the husband and his creditors. *Flowers, Ex.,* v. *Kent*, Brayton, 238 ; *Albee, Adm'r.,* v. *Cole*, 39 Vt., 319 ; *West* v. *Howard*, 20 Conn., 587 ; *Smith* v. *Chappell*, 21 Conn., 689.

It is only where the question arises directly between the husband and wife that resort must be had to a court of equity. *West* v. *Howard.* 20 Conn., 587.

The opinion of the court was delivered by.

BARRETT, J. That the mare became the property of the plaintiff by the gift of her first husband, in full and absolute title, is assumed by both parties in this case. It is found by the county court that "the gift was intended and understood as a gift to her separate use." In *Tulett* v. *Armstrong*, 4 My. & Cr., 390, it was held that the husband could not be permitted to interfere with the property given or settled before the marriage to the separate use of the wife. And in *Newland* v. *Paynter*, Ib., 408, it was held that personal chattels bequeathed to a single woman for her separate use cannot be taken in execution by a creditor of the after-taken husband. The same doctrine is promulgated by Chancellor WALWORTH, in *Shirley* v. *Shirley*, 9 Paige Rep., 363. See also *Barron* v. *Barron et al.*, 24 Vt., 375. Those cases were in the courts of chancery for remedy and relief which could not be had under the circumstances in a court of law. But the doctrine stands upon the ground that the husband had neither the equitable nor the legal right to the property as against the wife. And in the English cases it is held that a person marrying a woman

with property so owned and held by her, is considered as adopting the property in the state in which he finds it, and bound by equity not to disturb it. The reason is, that the original donor could prescribe such terms and conditions as to the tenure by which his gift should be held as he saw fit. This view of the law would seem to furnish in the present case a firm ground for the plaintiff to stand on in making the requisite title in herself, to enable her to maintain trover for the property against the defendant, irrespective of the ante-nuptial agreement. And on this view the county court acted in adjudging the cause in favor of the plaintiff.

Again : it is conceded, as it well may be, in view of the doctrine and rule established by many decided cases, that the husband may, during coverture, make a valid gift to the wife, by which she will become the owner, in her own separate right, of personal property. It is also conceded that by the treatment of property owned by the wife at the time of marriage, or accruing to her in her own right during coverture, by and between the husband and wife as continuing to be her separate property in her own right, unaffected by the fact of marriage, such property continues to belong to the wife the same as if she was not *covert*. A marked case of this kind was *Curtis* v. *Hapgood*—Robinson trustee, and Mrs. Hapgood claimant—decided at the general term of the supreme court, 1859, and not reported. The claimant had money at the time of her marriage to the defendant in 1835, and earned money by working at her trade as tailoress every year after marriage. She also inherited and received money from her mother's estate during coverture. In 1852 she bought a house and lot, for which she paid out of said money, taking the deed in her own name. She and her husband occupied the premises as their home till 1856, when she sold and conveyed them to the trustee and took his note for the purchase money. The plaintiff in that action sought to hold Robinson as trustee for the money due on that note. Mrs. Hapgood entered as claimant in her own sole name and right, and appeared by her attorney, without other representative or protector. The case was twice argued and fully considered. It was adjudged that she was entitled to hold the note and the money due on it as her own.

In this connection the case of *Richardson, Adm'r,* v. *Merrill,* 32 Vt., 28, may properly be referred to, and also *Cardell* v. *Rider,* 35 Vt., 47, as indicating the prevailing ideas of the law on this subject in this state. See also *Richardson* v. *Wait,* 39 Vt., 535 ; *Caldwell, Adm'r,* v. *Renfrew,* 33 Vt., 213. In these cases, and especially in the last two cited, the *legal* title of the wife was recognized in a court of law, as existing against the effect of coverture, by reason of an understanding between the husband and wife after marriage, rather implied than expressed, that certain property, which would otherwise belong to the husband, should remain and be the sole and separate property of the wife. And in *Curtis* v. *Hapgood,* and in *Richardson* v. *Wait,* such legal title was allowed to prevail against the husband's creditors.

It would seem then, *a fortiori,* that one contemplating marriage to a woman owning personal property might preclude himself, by a waiver before marriage, from a right which would otherwise accrue to him incidentally by the fact of marriage. In the present case, the title to the mare being already in the plaintiff, what took place between her and her contemplated husband was intended, and could only operate, to prevent title being divested from her by operation of law, on the taking place of the marriage. It is not the case of the wife acquiring title from the husband, either in fact or in prospect, by virtue of an ante-nuptial agreement. It is only the case of the contemplated husband waiving a right which the law would otherwise confer on him as a result of the marriage. In the language of Judge PECK in *Albee, Adm'r,* v. *Cole,* 39 Vt., 319, " the husband has abandoned and surrendered to his wife his marital rights as to this property, or rather what would have been his rights had there been no ante-nuptial agreement ; and hence the right of the wife to this property as her sole and separate property was perfect and absolute as against her husband."

Nevertheless the defendant claims that the alleged ante nuptial agreement, in order to have effect, should have been in writing, under the statute of frauds. This is an action of trover against one not a party to said agreement. The action is not based on

an agreement in consideration of marriage. It is based on a title which is conceded to have been absolute in the plaintiff up to the moment of marriage, and continued to be absolute thereafter, unless it was defeated by the fact of the plaintiff's marriage. It should be kept in mind that the lack of a writing does not render a contract in consideration of marriage in any way illegal or void under that statute. The statute only affects the matter of evidence by which such a contract may be proved, when it is sought to charge a person upon it by action. Having title to the property in her own right, she does not depend on that contract as the source of her title, or the ground of her right to maintain this action. The effect of said agreement was not to create a right of property in her in the future, upon the consummation of the marriage ; but its purpose and effect were to leave the right of property already existing in her unaffected by the ordinary legal effect of the marriage. The agreement became executed and its effect realized at once upon the fact of marriage, in the fact that the right of property was not transferred to the husband by such marriage. If it was not so transferred, then there never was a *scintilla* of title in him ; and, of course, he could not vest the defendant with any title or right of property in the mare. The plaintiff, then, is standing upon her title and right of property, unaffected by her marriage to the defendant's vendor, and is seeking in this suit to charge the defendant in virtue of that title, and not upon an agreement in consideration of marriage. It is not a suit to enforce the performance of an executory ante-nuptial agreement, or to recover damages for the breach of such agreement. To the agreement in question the defendant was neither party nor privy, nor is he to be chargeable upon it by reason of any relation he sustains to it by operation of law. He came into his relation to the property by voluntary purchase, but not so as to be able to invoke the doctrine of fraud in law, as a *bona fide purchaser* without notice,—for the husband never owned the property. The defendant got by his purchase only what right and title the husband had, as between himself and wife. So it is difficult to see how the defendant holds a *status* that entitles him to use the

statute of frauds as a shield. This view of the law was obviously entertained and acted on by counsel on both sides in the case of *Albee, Adm'r*, v. *Cole, supra*,—a case that was most vigorously contested both in the county and supreme court.

The judgment is affirmed.