## STATE *v.* HASTINGS.

*Forgery—Comparison of Handwriting.*

A count in an indictment that charges that respondent did falsely make *and* counterfeit a certain writing therein set forth, is not liable to the objection of duplicity.

An averment, in an indictment for forgery, of an intent to defraud one J. A. H., is sustained by proof of an intent to defraud a company or firm of which said J. A. H. is a member. An intent to defraud a firm, necessarily includes an intent to defraud each member of it.

Experts may make comparisons between the writing in dispute and other writings, which are either admitted or proved to be genuine, and their opinions thus formed in regard to the genuineness of the writing in question may be given in evidence. In such cases, the jury should first pass upon the question whether such writings as were thus introduced as standards of comparison were genuine; and if they find that they were, then they should consider and weigh the evidence of such experts, and may themselves examine such other writings and compare them with that in dispute, and institute comparisons for themselves; but if they find that such writings or any of them were not genuine, they should lay such writings and all the evidence based upon them out of the case.

1. This indictment—State against Sarah Hastings—alleged that the defendant did " falsely make and counterfeit" a certain writing therein set forth ; whereupon the defendant objected to that part of the indictment, on the ground that the same was a double pleading, and did not " fully and plainly, substantially and formally, describe to " her the offence of which she was accused.

The court overruled the objection, to which ruling the defendant excepted.

2. The indictment alleges the defendant's " intent to defraud one John A. Harris," and the evidence showed that, if any intent to defraud any one existed on the part of the defendant, it was an intent to defraud Harris & Co., of which firm John A. Harris was a member. Upon which the defendant objected, on the ground that there is a fatal variance between the charge and proof in such respect; but the court overruled such objection, and instructed the jury that, if they found an intent to defraud Harris & Co.,—John A. Harris being a member,— that would sustain the indictment as to the intent to defraud John A. Harris ; to which ruling and instructions the defendant excepted.

3. Frank E. Dodge, a witness for the state, testified that he was keeper of the jail in which the defendant had been confined ; that on two or three occasions he had seen her, while sitting in her cell, with

pencil and paper, writing, as he supposed; that he did not see he make a word or letter, and would not swear she was writing, bu thought so; that he had read a dozen or so of letters purporting to be the defendant's, and signed with her name, two or three of which the defendant had handed him, and one of them he had received from he while in a room alone, and had forwarded all of them to parties out side; that he had not seen any of them since, and had had no communi cation with her respecting them; that he believed the defendant wrote them, but did not know and would not swear that the defendant wrote any of them;—upon which the state proposed to have him examine the alleged forged writing, to give his opinion whether the same was in the handwriting of the defendant, to which the defendant objected; but the court overruled said objection, and allowed the witness to testify that, in his opinion, the same was in her handwriting; to which ruling and evidence the defendant excepted, on the ground that the said wit ness had not the knowledge required by law to enable him to give an opinion in respect to such matter.

4. Bushee, a witness for the state, testified that the defendant boarded with him at the time she was arrested; that he had seen her with pen cil and paper, as if writing, but could not say she was, would not swear she was,—might have been scribbling; that two or three days after she was arrested, at the request of the city marshal, he went up stairs into the room previously occupied by the defendant, looked into a box on a light-stand, and found a paper with writing on it, which he produced and identified; did not know whose the box was, only that it was not his; did not know that the defendant made the writing, and had no belief in respect to it. The said writing contained no date, ad dress, or signature; upon which the state proposed to place the said writing in the hands of the jury as a standard, and for the purpose of comparison between it and the alleged forged paper: against said pro ceeding the defendant objected; but the court overruled said objection, and allowed the same to be placed in the hands of the jury for such purpose, to which ruling and use of said paper the defendant excepted. The evidence reported in the case was all the evidence introduced at the trial tending to show that the respondent wrote the paper described in said fourth exception, or that she had any knowledge respecting it. The contents of said paper were in no way relevant to the issue.

The jury returned a verdict of guilty; and, after sentence, the respon dent tendered the foregoing bill of exceptions, which was allowed.

*Solicitor*, for state.

*Hawthorne & Greene*, for respondent.

I. The exception to the indictment is that it is double, and that it did not "fully and plainly, substantially and formally" describe the offence of which defendant was accused. The indictment was brought under the General Statutes, chapter 257, section 1, which states three

distinct methods by which the crime of forgery may be committed,—
1. By falsely making; 2. By counterfeiting; 3. By fraudulently alter-
ing any  *  *  order  *  *  for  *·  *  property with intent to defraud
any person, etc.  These methods are not synonymous in the statute,
nor did the legislature intend they should be so considered.  At com-
mon law, it is true " a false making of· a whole instrument," and " a
fraudulent insertion, alteration, or erasure of a letter in a material
part" whereby a new operation " is given to it," are alike forgery.  2
Bouvier, title Forgery, 1, 4.  But they are neither of them counterfeit-
ing.  *Vide* 1 *ibid.*, title Counterfeit.  And whatever force may be given
to them in ordinary usage, and whether or not in certain cases they
have the same meaning, is of no concern here.  The legislature chose
to employ words as they did; and a fair construction, it should seem,
stamps them as radically distinct methods of committing the same
offence.  The reasoning of the court in *State* v. *Canny*, 19 N. H. 13, seems
to us applicable.  If these views are just, then the respondent was not
properly advised of her offence.  Constitution, art. 14, part 1; *State* v.
*Gray*, 36 N. H. 359, 361; *State* v. *Follet*, 6 N. H. 53; *Commonwealth* v.
*Davis*, 11 Pick. 432; *Commonwealth* v. *Phillips*, 16 Pick. 213; *Common-
wealth* v. *Brown*, 13 Met. 368; *Commonwealth* v. *Blood*, 4 Gray 32, 33.
Hence she could not properly prepare her defence as was her undoubted
right.  It was impossible for her counsel to say, from the indictment,
what specific charge was to be met.  The verdict of the jury, nor the
discharge or sentence of respondent, could be afterward properly plead-
ed in bar in another action for the same offence.  *Commonwealth* v.
*Maxwell*, 2 Pick. 143; *Commonwealth* v. *Pray*, 13 Pick. 363; *Common-
wealth* v. *Wade*, 17 Pick. 399; *Commonwealth* v. *Slack*, 19 Pick. 307.

II. The second exception was well taken.  The indictment alleges
an intent to injure a particular person, *i. e.*, to defraud one John A.
Harris, which was a material matter.  Wharton Am. Crim. Law 592,
277, 1.  And the evidence showed if any intent existed to injure any
one, it was to defraud Harris & Co., of which firm John A. Harris was
a member.  The variance was fatal.  It should have been proved as
charged.  " Thus, an indictment for pulling down a house must allege
the name of ·the owner, and where it was stated to belong to A, and
the proof was that A was a *femme·covert*, the conviction was held erro-
neous."  *State* v. *Martin*, 3 Murph. 533.  So, in an indictment for lar-
ceny of goods laid as the property of H, and the evidence showed it to
be the property of H & E, *partners*, the variance was held to be fatal.
*Commonwealth* v. *Trimmer*, 1 Mass. 476; *State* v. *McCoy*, 14 N. H. 364.
So, a complaint· for unlawfully selling intoxicating liquor to a person
unknown, on which the defendant is convicted before a police court on
proof of a sale to C D, is not supported on appeal by proof of a sale to
E F. ' *Commonwealth* v. *Blood*, 4 Gray 31.  An allegation of a sale to
Geo. E. Allen is not supported by a sale to George Allen.  *Common-
wealth* v. *Shearman*, 11 Cush. 546.  In an indictment for wilfully ob-
structing an engine passing on a railroad alleged to be built by the
Boston & Worcester Railroad *Company*, it is a fatal variance if the true

name be the Boston & Worcester Railroad *Corporation*. *Commonwealt.*
v. *Pope*, 12 Cush. 272. Even if it had been unnecessary to so particu
larly describe the intent,‛ it having been thus set forth, it must be prove(
as laid. *Commonwealth* v. *Harley*, 7 Met. 506 ; *State* v. *Copp*, 15 N. H
212 ; *State* v. *Langley*, 34 N. H. 529, 532. It is well settled that al
allegations which are not impertinent or foreign to the cause, must b(
proved ; although a prosecution for the offence charged might be sus
tained without such allegations. *U. S.* v. *Porter*, 3 Day 283. Th(
same principle obtains in all civil proceedings. 2 Phillips Ev., Cowe(
& Hill's notes 401, and cases cited p. 408. And as the personal lib
erty of the citizen is, at least, as deserving of protection as his righ
of property, and as " like reason makes like law," it should seem t(
follow that the rule properly extends to all criminal proceedings, an(
so to the case at bar. Assuming, therefore, the soundness of the fore
going views, the conclusions are plain enough : 1. That it was neces
sary to allege an intent to injure some particular person ; 2. Tha
such allegation must be proved as laid ; 3. That evidence tending t(
prove an intent to defraud Harris & Co., of which concern he was .
member, is not competent evidence to sustain the charge of intent t
defraud one John A. Harris ; and 4. That such variance was fatal.

III. The testimony of Frank E. Dodge, the jailer, that in his opinio.
the alleged forged writing was in respondent's handwriting, was in
properly admitted. 1. Because he had no sufficient knowledge of h(
handwriting on which to found a belief, which is a condition precedei..
to the competency of the witness in such regard. The witness, to 1
qualified to testify to handwriting, must have a belief founded on know
edge. 1 Greenl. Ev., sec. 576. There are two modes of acquiring suc
knowledge. The first is from having seen him write, although b(
once. The proof in such case would be very light ; but the jury wi
be permitted to weigh it. 1 Greenl. Ev., sec. 577 ; *Burnham* v. *Ayer*, 3
N. H. 184 ; *Bowman* v. *Sanborn*, 25 N. H. 87 ; *Rideout* v. *Newton*, 17 N. I
71 ; *Reed* v. *Spaulding*, 42 N. H. 114, 121 ; *Wiggin* v. *Plummer*, 31 N. I
270. Dodge says he did not see her make a word or letter, and woul
not swear she was writing, although he supposed she was, on two (
three occasions, in her cell ; and would not swear that responde(
wrote any of the dozen or so of letters purporting to be hers, and :
be signed with her name, which he read and mailed, only that he b
lieved she wrote them. So far, then, he was not qualified to testif
" The second mode is by *having seen letters* or other documents pu
porting to be the handwriting of the party, and having *afterwards pe* ·
*sonally* communicated with him respecting them ; or acted on them ;
his, the party having known and acquiesced in such acts founded up(
their supposed genuineness," or by such adoption of them into the *o*
*dinary business transactions* of life as induces a reasonable " presum
tion of their being his own handwriting." 1 Greenl. Ev., sec. 577. :
The case finds that Dodge received and forwarded a dozen or so of le
ters purporting to be written and signed by the defendant, two or thr(
he had got from her, and one of which she gave him while she was i

a room alone; that he had never seen any of them since, and *had had no communication with her respecting them*. The witness never had occasion to act upon them as the defendant's, in any other manner, or for any other reason, and only as he did in respect to the letters of all other prisoners under his care, *i. e.*, looked them over and forwarded them. We respectfully submit that in no respect did the witness come within the rule in·Greenleaf, as above stated, and most certainly not within the practice of our own courts. At most, Dodge only had a belief founded upon an inference, based, as we say, upon insufficient data; and could have stated, as a matter of fact, no more than this : That in his opinion the alleged forged writing was similar to those letters he had received and sent. And that would not be competent evidence for the jury, for it would be allowing a comparison between writings *not* admitted or proved *to* be genuine, contrary to all ·the cases, beside putting the witness in place of the jury, a practice we understand not in vogue in our judicial proceedings. At all events, a belief so founded upon an inference is not competent evidence. *Kingsbury* v. *Moses*, 45 N. H. 222, 225; *State* v. *Flanders*, 38 N: H. 324, 332; 333. And that the witness is clearly within the exceptions stated in those cases, we have no doubt.

IV. Bushee, a witness for the state, had no knowledge and no belief as to the writing produced for the purposes of comparison, and which was allowed to go to the jury for such purpose, without being admitted or proved to be the handwriting of the respondent; and upon the insufficient premises contained in the exception. Such proceeding, we respectfully urge, was erroneous. The authorities are weighty, numerous, and one-sided. We cite but a few of them. *Bowman* v. *Sanborn*, 25 N. H. 87; *Reed* v. *Spaulding*, 42 N. H. 114, 122; *Burnham* v. *Ayer*, 36 N. H. 185; *Wiggin* v. *Plummer*, 31 N. H. 270; *Com.* v. *Eastman*, 1 Cush. 189; *Hall* v. *Huse*, 10 Mass. 39; *Moody* v. *Rowell*, 17 Pick. 490; *Cabot Bank* *Russell*, 4 Gray 167; *Emery* v. *Goodwin*, 3 Dane Ab. 76. The paper ?l to have been found by Bushee was proved in none of the ways ·ired by law—nay, was in no manner shown, and most certainly ? not admitted to be, the handwriting of respondent, and was not a per standard of comparison for any purposes of the suit, and espe- ?ly was incompetent to be so taken and considered by the jury. The ?e evidence tending to show that respondent made the alleged ?ged paper is substantially set forth in exceptions 3 and 4, and has ?en herein considered. That paper, set out *pro hac verbe*, was of the gist of the offence charged, and in our judgment was not legally proved against the respondent. With these reflections, we respectfully submit the case, trusting that, if any errors incident to a hurried trial may upon consideration be found in the proceedings of the court below, they will all be duly adjusted and remedied in this honorable court above.

SARGENT, C. J. The first exception is not well taken. Where the same section of a statute makes two or more distinct acts connected with the same transaction indictable, each one of which may be con-

sidered as representing a stage in the same offence, they may usually be coupled together, not only in the same indictment, but in the same count. 1 Whart. Am. Cr. Law (6th ed.) sec. 390; 2 id., sec. 1466. A case directly in point is State v. Morton, 27 Vt. 310. So, in Massachusetts, in an indictment on Rev. Stats., ch. 58, sec. 2, wherein the setting up or promoting of any of the exhibitions therein named, without license therefor, is prohibited, it is not duplicity to allege that defendant " did set up and promote " such an exhibition. Commonwealth v. Twichell, 4 Cush. 74.

So, a neglect by supervisors of roads, both to open and to repair a highway, may be charged in the same count in an indictment against them. Edge v. Commonwealth, 7 Barr 275. So, under the statute forbidding any one to obstruct or resist process, the indictment charged that respondent did obstruct and resist. Held good. Slickee v. State, 13 Ark. (8 Eng.) 397. So, in this state, under a statute providing that " no person shall make any brawls or tumults in any street," etc., a complaint that charged respondent with unlawfully making, at said Manchester, on a certain street, " a great noise, brawl, and tumult ' upon motion to quash, held that there was no duplicity. State v. F kins, 42 N. H. 464 ;—and, to the same point, see Stoughton v. Sta⌐ Ohio St. 562, and Mackey v. State, 3 Ohio St. 363, overruling 1 v. State, 1 Ohio St. 185. But the offence in such cases must ⫯ charged in the disjunctive in the indictment, as it is in the statu' Chitty's Crim. Law *194.

The second exception must also be overruled. If the charge in this case were for larceny of goods, the description of the goods as belonging to John A. Harris would not be sustained by proof that they were the goods of Harris & Co., of which firm John A. Harris was a member ; because, in that case, the ownership of the goods is an important part of the description of the offence, since a conviction for stealing the goods of A B would be no bar to another indictment or prosecution for stealing the goods of the firm of A B & C D. Com. v. Trimmer, 1 Mass. 476 ; State v. McCoy, 14 N. H. 364; 2 Whart. Am. Cr. Law, secs. 1820, 1822, 1828, 1833, and cases cited. But in forgery, the offence consists in falsely making and altering a certain written instrument which is set forth and particularly described in the indictment. This must be done with a fraudulent intent ; but it may be with intent to defraud the man purporting to be the signer or maker, but oftener some other person upon whom the paper is passed as true, and oftener still it may be with the general fraudulent intent to cheat everybody upon whom the forger may be able to impose ; and if the fraudulent intent exist, that is enough, whether any particular person is intended to be defrauded or not.

A forged check was drawn on Worcester old bank, but was presented by the prisoner to Rufford's bank at Southbridge, and refused ; and the prisoner was indicted for forging and uttering the check, with intent to defraud the Messrs. Rufford. It was objected that, as it was not drawn on them, it could not defraud them; but BOSANQUET, J.,

held that, as it was presented at their bank for payment, it was evidence of an intent to defraud them, and that the indictment was sufficient; and that, too, even though the supposed drawer never kept any deposit in Rufford's bank, so there was no probability of their paying the check even if it had been genuine. *Rex* v. *Crowther*, 5 Car. & P. 316.

Our statute only makes it necessary that the paper be forged " with intent that any person may be defrauded." Gen. Stats., ch. 258, sec. 1. Under a similar statute in New York—*People* v. *Curling*, 1 Johns. 320 —the prisoner was charged with forging a check on the Manhattan Company, signed " Daniel Ludlow & Co." There were several counts in the indictment, and it was shown that the firm of Daniel Ludlow & Co. consisted of three partners; and one count in the indictment, only, charged an intent to defraud Daniel Ludlow, who was one of the three. That case would be like the one before us. In considering the motion in arrest of judgment, the court said that it was not necessary to state an intention to defraud every individual of the company; the omission, therefore, of the name of one of the partners in one count, and of two of them in another, is not fatal; and that, though an intention may have existed to defraud every member of society through whose hands the check passed, nothing more was required than that any one person thus intended to be defrauded should be designated. " An acquittal, on such an indictment, will always be a bar to another prosecution for the same forgery, though it may be laid with intent to defraud some other person. This is a reasonable course, and safe for the prisoner."

So, in *Stoughton* v. *State*, 2 Ohio 562, it is held that an averment of an intent to defraud one individual is sustained by proof of an intent to defraud a body or firm of which that individual was a member; that an intent to defraud a firm necessarily included an intent to defraud each member of it; and see 2 Whart. Am. Cr. Law, secs. 1456, 1459.

Nor can the third exception be sustained; for, although Mr. Dodge had never seen the respondent write a word or sentence so that he could swear to it, yet he had seen her writing, as he supposed, with pencil and paper, and he had read a dozen or more letters purporting to be hers, and to be signed by her name, some of which she had handed him, and one of which she had given him when they were in the same room, with no others present, requesting him to forward them by due course of mail, and all of which he had forwarded according to directions, and had heard nothing of them since; that he believed she wrote them, but could not swear to it, and had had no communication with respondent concerning them since. Greenleaf says he must have acted on these letters as his (the writer's), the party having known and acquiesced in such acts, founded upon their supposed genuineness, or by such *adoption* of them into the *ordinary business transactions* of life as induces a reasonable presumption of their being his own handwriting." 1 Greenl. Ev., sec. 577.

The handwriting of a party may be proved in various ways, and one

way is by the acknowledgment or admission of the party, and in most states in this country by a comparison with other writings. 2 Whart. Am. Cr. Law, sec. 1463. In what way could the respondent have *adopted* these letters as hers more fully than she did ? Her admission that she wrote them would clearly have made them competent, whether made at the time she gave them to the jailer or afterwards. But what stronger admission could she have made, than she did in this case by her acts, that these letters were hers ? "The admissibility of the evidence must depend upon whether there is good reason to believe that the specimens from which the witness has derived his knowledge were written by the supposed writer of the paper in question. 1 Phillips Ev. (C. & H.) 486 ;—see, also, notes 914 and 915, vol. 3, pp. 1324, 1326. *Johnson* v. *Divine*, 19 Johns. R. 134, where it was held that the payment of notes purporting to be signed by a party, is, unexplained, a full admission that he had made and subscribed the notes. Why, then, were not the respondent's acts in this case a sufficient admission that she wrote and signed the letters which she sent forth as hers, and which purported to be signed by her ? We think, upon the authorities, that this witness was properly allowed to testify, from his knowledge of the respondent's handwriting, that the signature in question was her signature. But the more proper course in all such cases would be to submit the whole question to the jury, and, if they find that these letters were written by the respondent, then they should consider and weigh the opinion of the witness; but, if not, then the testimony of the witness should be laid out of the case. There is no more propriety, really, in the courts passing upon these preliminary questions of fact, than there would be in their settling the real questions in issue.

Upon the fourth question raised in the case,—as to the comparison of handwriting by experts, and by the jury,—there is a motion before the judge, who presided at the trial, to amend the case so as to state the testimony more fully : we will therefore consider the general question somewhat. In *Myers* v. *Toscan*, 3 N. H. 47, it is held that it cannot be left to the jury to determine the genuineness of a signature to a paper, merely by comparing it with other signatures proved to be genuine, but that after witnesses acquainted with the handwriting in question have testified, other signatures *proved* to be genuine may be submitted to the jury to corroborate or weaken their testimony. In *Bowman* v. *Sanborn*, 25 N. H. 110, it is said, where there are other signatures of the person already in evidence in the case, a comparison may be made between the signatures *admitted* to be genuine, and the one in question, without any previous proof as to handwriting. *Reed* v. *Spaulding*, 42 N. H. 111, 121, 122, follows *Bowman* v. *Sanborn*, that it is only between signatures *admitted* to be genuine, and which are already in evidence in the case, and the one in question, that a comparison can be made by experts or the jury, and that this may be done without any other preliminary evidence, thus contradicting *Myers* v. *Toscan ;* while the second case, of *Reed* v. *Spaulding*, decided in Sulli-

van Co., Dec. Law Term, 1862, and not reported, held that the standards of comparison might be *proved* to be genuine as well as to be *admitted* to be so; and that they might be introduced anew for the purposes of the comparison, as well as to use those already in the case for other purposes. *State* v. *Shinborn,* 46 N. H. 497, follows *Bowman* v. *Sanborn,* that the comparison may be made without waiting for any other evidence derived from a knowledge of the handwriting. *Lyon* v. *Lyman,* 9 Conn. 54; *Moody* v. *Rowell,* 17 Pick. 490.

While the rule has thus been unsettled in this state, and in many other states, the English courts have for centuries denied the admissibility of such testimony altogether, for various reasons, the principal of which for a long time was, that their juries were unlettered, and, as they held, incompetent to institute such comparisons; but at length so urgent seemed the necessity, that parliament took the matter in hand, in 1854, and passed what is known as " The Common Law Procedure Act," 17 & 18 Victoria, ch. 125, which provides that " comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute." 2 Phil. Ev. (4th ed.) 616. This seems to us a reasonable rule. We have no doubt that the interests of justice and truth in many cases require the introduction and use of such testimony, and that, when guarded by proper rules, it is as safe and free from objection as any other human testimony which requires the exercise of the judgment and discretion of the court and jury in determining whether it is sufficient to prove the alleged fact. *State* v. *Ward,* 39 Vt. 325, 336.

Under this rule, when any writing is proved to be genuine to the satisfaction of the presiding judge, it shall be admitted; and comparisons may be made between that and the writing in dispute, by witnesses, who may give their opinions founded on such comparisons; and then the writings themselves, and the testimony of the witnesses respecting the same, are to be submitted to the jury. It is immaterial whether or not any other evidence has preceded it, from witnesses who have seen the party write, or in any other way have a knowledge of his handwriting, as to the genuineness of the writing in dispute. In England, under that statute, the jury probably need not consider the question of the genuineness of the paper introduced for the purpose of comparison, as the statute seems to make the finding of the judge on that point conclusive; but without such a statute it would seem to be necessary that the evidence of the genuineness of such paper should be introduced to the jury, and then that the jury should find that fact for themselves upon all the evidence. With this modification, we see no reason why this English rule may not be adopted in this state as a plain and just rule, to be followed in all such cases. The state of Vermont has adopted a similar rule. *State* v. *Ward,* 39 Vt., *supra.*

In this last case, it is said, " in criminal prosecutions, when the guilt

of the accused is sought to be established by proof afforded by comparison of handwriting, the sufficiency of the proof given of the genuineness of the papers offered as standards is a preliminary point addressed to and in the first instance to be determined by the court before permitting the papers to go to the jury. The court having adjudged the papers genuine, and having permitted them to go to the jury, it then becomes the duty of the jury, before making comparison of a disputed writing with them, to examine the testimony respecting their genuineness, and decide whether their genuineness was established beyond a reasonable doubt" (that being a criminal case); " and in such cases the court should instruct the jury that if they did not find by such measure of proof that the papers offered as standards are genuine, they should not be used as evidence against the prisoner."

In this state, then, any competent evidence, tending to prove that the paper offered as a standard of comparison is genuine, is to be received, no matter whether that evidence be in the nature of an admission of the proper party, or the opinion of a witness who knows his handwriting, or of any other kind whatever. It is to be received, and then the jury are to be instructed that they are first to find, upon all the evidence bearing upon that point, the fact whether the writing introduced for the purpose of comparison, or sought to be used for that purpose, is genuine. If they find it is not so, then they are to lay this writing and all the evidence based upon it entirely out of the case; but if they find it genuine, they are to receive the writing and all the evidence founded upon it, and may then institute comparisons themselves between the paper thus used and the one in dispute, and settle the final and main question whether the signature in dispute is or is not genuine. We think this is the true rule, that is, or ought to be, adopted in this state. It is no longer the criterion to exclude everything that raises a collateral issue. If the testimony is competent, that is sufficient; and it is for the court to decide when the evidence becomes so distant and shallow on collateral issues that it should be excluded. *Darling* v. *Westmoreland*, 52 N. H. 401.

But after preparing our opinion with the expectation that the case would be so amended as to make the testimony of Bushee competent, we now find that no amendment of the case is to be made; and looking at the testimony as it stands in the case, I cannot see how it can be competent. It does not appear that the witness ever saw the respondent write, or was in any way acquainted with her handwriting. He did not know who wrote this paper, and had no belief about it; the writing had no date, address, or signature. All that does appear is, that, two or three days after the prisoner was arrested, the witness went into a room previously occupied by her, looked into a box, and found a paper with writing upon it, which he produced, and testified was the one he thus found. This is all there is of it. It does not appear whether she occupied the room alone or with one or more other persons, how long she had occupied it, or for what purpose or in what way, whether she had or might have had any occasion to use this work-box or stand

in her room, or whether it had been used by her room-mates or others.

And after the arrest, it does not appear whether this room had been occupied or not; or, if so, by whom. A new occupant may have come into this room and brought this work-box and paper after the arrest, or there may have been several occupants. It does not appear that the prisoner ever had any article of furniture in that room, or if she had, that she had not removed it, or it had not been removed by somebody else; and as to this paper, there is no more evidence that the prisoner wrote it than that anybody else did, except it was found in a room she once occupied. It seems unaccountable that this testimony should have been left in this way. Its importance in the case, and the ease with which other facts might evidently have been proved, which would have made the evidence not only competent but very probably controlling, has led us to suppose the case would be amended so as to show that there was not only competent evidence, but such as would satisfy the jury that this paper was written by the respondent, and therefore was competent to be received in evidence for the purposes of comparison. But as the case stands, the evidence, we think, was improperly admitted, and the exception well taken, and the entry must be,

*Judgment reversed.*