J. E. WILLARD, Admr. of MELISSA FISHER'S ESTATE, *v.*
IRA DOW.

*Married Woman.    Power to Contract.    Insanity, question for
the Jury.    Delusion.    Monomania.*

1. A married woman living separate from her husband, owning property in her own
   right, and having kept it in her possession and control, may contract with a
   third party for a life support, and thereby convey her entire estate.
2. There was a question as to the capacity of the plaintiff's intestate to contract con-
   cerning her property. The evidence tended to show partial insanity; but some
   of the witnesses said "she seemed sound upon money matters." *Held,* error,
   in not submitting it to the jury.
3. Delusion, monomania, when may not work incapacity.
4. R. L. s. 2322, property of wife—construed.

TRIAL by jury, June Term, 1881, Caledonia County, Ross, J.,
presiding.   Action, assumpsit ;   plea, general issue ;   verdict or-
dered for the defendant.   The facts as to the *principal* question
discussed by the court are sufficiently stated in the opinion.   As
to the question of insanity of the wife, the plaintiff's evidence
tended to show that her first husband, a Mr. Weeks, had deserted
her, and gone away with a certain girl ; that this trouble had un-
settled her mental balance, and that she talked queerly about said
Weeks and this girl ; that she would brood over this trouble, and
talk of it a good deal, and seemed a good deal out of her head ;
but some of the witnesses said that she seemed to be sound upon
money matters.   One witness said : " She acted as if she was
mad ; at particular times she acted like an insane person.   She
looked wild, and her eyes stared out.   Did'nt observe that she
was violent.   I think she was insane at particular times.   Insan-
ity existed in the family."

Tne defence introduced quite a number of the neighbors of said
Melissa, who said that they had never seen any indications of un-
soundness of mind.

The plaintiff asked to go to the jury upon the subject of her ca-
pacity at the time of making the contract with Dow, but the court

held that there was no evidence to submit to the jury on that subject; to which ruling the plaintiff excepted.

There was but little testimony on either side as to the question of insanity.

*H. C. Bates* and *Elisha May*, for the plaintiff.

The contract of a married woman is absolutely void. 1 Pet. 338; 3 Paige, 117; 15 Me. 304; 6 Ala. 737; *Brown* v. *Sumner's Est.* 31 Vt. 671; *Ingham* v. *Nedd*, 44 Vt. 462; *Hayward* v. *Barker*, 52 Vt. 429; *Smith* v. *Plover*, 15 East, 607; 2 Hilton., (N. Y.) 438; 39 Penn. 299; 4 Camp. 26; 31 Ala. 89. The only exceptions to the foregoing rule, found in our law, are in cases where the wife acted as the agent of the husband, or under authority directly given by the statute. *White & Wife* v. *Waite*, 47 Vt. 502. Hence we say that unless the contract comes within one of the above exceptions, there is no precedent or law upon which it can be sustained. Was such authority given by any of the enabling acts then in force in this State? The rights of a *feme sole* are bestowed upon the wife only in the manner pointed out by section 2328, R. L. 1880; Acts 1870, No. 25, sec. 1. The right of a *feme covert* to dispose of her personal estate is limited by Act No. 13, 1869, amending s. 1, c. 71, Gen. Sts.—R. L. 2329; *Nedles* v. *Nedles*, 7 Ohio St. 432; *Miller* v. *Hine*, 13 Ohio St. 565; *Brunner's Appeal*, 47 Penn. St. 67. By the common law the marriage operated as an absolute gift to the husband of all the property the wife then owned. Tyler on Infancy, s. 211, p. 319; *In re Polly Carey's Est.* 49 Vt. 236. By separation the husband was not discharged from supporting his wife. *Russell* v. *Brooks*, 7 Pick. 65; *Gurth* v. *Muncy*, 2 J. J. Marsh, R. 82; *Ross* v. *Ross*, 69 Ill. 569; *Brown* v. *Worden*, 39 Wis. 432. As to the wife's separate property being liable for her debts for necessaries, see 50 Vt. 20; 42 Tex. 188; 43 Miss. 61; 25 Gratt. 393; 13 N. J. Eq. 232. As to the question of insanity, see Redf. on Wills, 1, 78, 80; 5 Russ. Ch. 163.

*Belden & Ide*, for the defendant.

The property belonged to the wife; was in her possession and control. A court of law will recognize her *legal* title. *Richard-*

*son* v. *Wait*, 39 Vt. 535 ; *Caldwell* v. *Renfrew*, 33 Vt. 213 ; *Frary* v. *Booth*, 37 Vt. 87 ; *Barron* v. *Barron*, 24 Vt. 375 ; *Child* v. *Pearl*, 43 Vt. 229. The right of the wife to dispose of her separate property without the intervention of her husband is fully recognized in the following cases : *Imlay* v. *Huntington*, 20 Conn. 149 ; 27 Conn. 192 ; *Kimme* v. *Wiepert*, 46 Mo. 532 ; *Kirksay* v. *Friend*, 48 Ala. 276 ; *Burnett* v. *Hawfe*, 25 Gratt. 481 ; *Levey* v. *Darden*, 38 Miss. 57 ; *Chase* v. *Bell*, 13 Md. 348 ; *Johnson* v. *Cumming*, 1 Green. (N. J.) 97.

The opinion of the court was delivered by

VEAZEY, J. The question is whether this plaintiff, as the administrator of Mrs. Fisher's estate, can recover in this action of assumpsit for the money which she appropriated for the support she received from the defendant. Mrs. Fisher was married to Welcome Fisher in 1873, and her husband is still living. They lived together about a year and separated. After the separation the husband did nothing for his wife's support. She died in 1878, and was the said Welcome's lawful wife at her decease. At the time of the marriage she had property to the amount of $1200 to $1500, consisting of money and notes due her, and had some furniture and clothing. Her husband never reduced said notes to possession, nor asserted any claim to any of her property ; but she always kept the same as her separate property until she turned it over to the defendant in 1877 under his agreement to support her through life, pay all her bills and give her respectable burial at her decease ; all which he has performed. At that time she had a fatal malady, of which she finally died. Mrs. Fisher had this property before her marriage ; therefore, her right to use it and her husband's right to it is not affected by our statute which applies only to after-acquired property, R. L. sec. 2322, but depends on the common law. At the common law, by the marriage, the husband becomes the absolute owner of the wife's personal chattels capable of immediate and actual possession ; and to her choses in action, as debts due by bond, note, simple contract, or otherwise, he has a qualified right, rendered ab-

solute by reducing them into possession during coverture. 2 Kent Com. 135 ; *Barron* v. *Barron et al.*, 24 Vt. 375. But it is established in this State that a court of law will recognize the *legal* title of the wife in personal property, which she had at the time of marriage, as continuing to exist against the effect of coverture, where there has been an ante-nuptial agreement by which the wife is to retain her interest and control ; and, also, by reason of an understanding between the husband and wife after marriage, rather implied than expressed, that the property which would otherwise belong to the husband, should remain and be the sole and separate property of the wife. *Albee, Admr.*, v. *Cole*, 39 Vt. 319 ; *Child* v. *Pearl*, 43 Vt. 224, and cases there cited.

We think this case comes under the latter class, and that the court should recognize the *legal* title of the property which Mrs. Fisher had at the marriage as continuing in her. The result is, that in making provision for herself, she was dealing with her own separate property, and this was long after her separation from her husband, upon whom the duty rested to support her, but who had left her without support and without asserting any right to the property. Under the circumstances she could have applied to a Court of Chancery, and would have been entitled to relief by way of support for herself out of said property. She could have made a charge upon it for her support by contracting upon its credit, which chancery would enforce. *Frary et al.* v. *Booth et al.*, 37 Vt. 78, and cases there cited. She could have used it in payment for board and clothing from week to week. Instead of resorting to either of these remedies for relief, she feeble, abandoned and helpless, except by resort to her property, delivered it all in advance to the defendant for the consideration of a life support, which she has received. The ground of recovery insisted on is, that Mrs. Fisher was under the disability of coverture to make a contract when she took this method of providing for support. The question in fact is, whether the defendant obtained a good title to the money and property he received. This question is fully answered by the case of *Caldwell, Admr.*, v. *Renfrew*, 33 Vt. 213, where it was held that where both husband and wife have always treated as the latter's separate property, and as under

her control, money and notes, belonging to her before, or accruing to her during coverture, her right to hold and dispose of the same as she may choose, will be recognized and protected by courts of law as well as of equity. And Judge BARRETT says, in the opinion : " Whatever may have been the idea formerly as to the necessity of administering the rights of the wife in her separate property through a court of equity, it must follow as a necessary consequence of her legal title, recognized and protected in courts of law, that courts of law will recognize and give effect to those acts, by her voluntarily done, which affect that title." The same principle was adopted in *Richardson* v. *Estate of Merrill*, 32 Vt. 27, and recognized by Ld. HARDWICK in 2 Ves. 190, and by Ld. THURLOW in 1 Ves. 103, and in numerous cases cited in defendant's brief.

Another point of exception is to the ruling of the County Court on the evidence of insanity ; and the question is, whether there was sufficient evidence that Mrs. Fisher was insane to entitle the plaintiff to go to the jury on this claim of incapacity. The plaintiff's evidence tended to show partial insanity ; but some of the witnesses said she seemed sound upon money matters. Counsel upon both sides gave but very little attention to this branch of the case, either in their briefs or arguments ; and upon the limited presentation made, we do not think it best to attempt to define the law in its refinements on this important topic.

The general rule is that a person of mature age has the capacity to make a contract if he understands the nature of it, and the effect of the language used to express his intention. It does not follow that he has not this capacity from the fact that he has some delusion about a matter not related to property or contracts. If this were so, as a learned judge once inquired, " What would be the condition of those who happened to have dealings with a jealous husband, a suspicious neighbor, an infatuated lover, a deceived and half crazed demagogue, a Hindoo worshipping an idol, a sincere and enthusiastic but deluded follower of Mahomet, or a modern spiritualist with his ' harmonial philosophy ' and ' aerial spheres ' ? Are these men to be read out of society as insane on all subjects, and rendered powerless to provide for them-

selves and their families?" Although monomania or partial insanity does not necessarily indicate a general unsoundness of mind, we think the evidence as to Mrs. Fisher's condition of mind sufficiently tended to show insanity, to entitle the plaintiff to have the question of her capacity to deal with and dispose of her property for the purposes shown submitted to the jury; and on this ground that the judgment should be reversed. *Dunham's Appeal*, 27 Conn. 192.

The questions raised on the admission of evidence are waived by the plaintiff.

Judgment reversed, and cause remanded.