SAMUEL W. BENT v. MINERVA A. BENT.

[IN CHANCERY.]

*Trust. Husband and Wife. Gift by Husband to Wife. Wife's
Separate Property. Deed to Wife of Land paid for
by Husband.*

Payment for premises by a husband and a conveyance of the same to the wife, with no
other facts shown, vests an absolute title to the premises in the wife. In such a case,
the law, instead of presuming that the payment and conveyance was intended to be
for the benefit of the husband, as it would if the conveyance had been taken to a stran-
ger to the family relation, presumes the payment to have been made by him by way
of an advancement, or as a gift to the wife, for the purpose of making provision for
her future support.

To entitle a husband to a conveyance of premises to himself, where he had paid for the
same and took a conveyance thereof to his wife, he must show, that at the time he
paid for the premises and took the conveyance to her, it was mutually understood be-
tween him and his wife, and was their intention and purpose, that she should hold the
property as the property of her husband, and not as her own property.

A husband may surrender to his wife the right to her personal property, which the law
gives him by reason of the marrriage; he may do this by *ante* nuptial contract, by al-
lowing her to claim and control, for a long time, property given her during coverture,
as her separate property, and refraining to exercise the right which the law gives him
to take from her such property and use it as his own.

If a husband makes a gift to his wife either before or after marriage, she is entitled to
the property given as against him, under the circumstances of this case, and he cannot
retake it.

BILL IN CHANCERY. The orator alleged in his bill that in 1860
he became the owner of a certain farm in Cavendish, of about the
value of three thousand dollars, by virtue of the last will and
testament of his father, David Bent, with some personal property
thereon, and this was nearly all the property he then possessed;
that he occupied and carried on said farm till about 1864, when,
his health being very poor, he was unable to support his family
from said farm, and after full consideration, with the advice and
consent of the defendant, who was then his wife, he determined
to sell the same, which he did to one Foster, for twenty-seven
hundred dollars; that with the like advice and consent of his said
wife, the orator determined to go into mercantile business, and
purchased of one Davis a stone store, in Cavendish, and agreed

to pay said Davis therefor the sum of $1700, and that he then paid said Davis the sum of $500 towards the price, and said Davis agreed to deed said store to the orator when he should pay the balance of the price ; that after said trades were made, the defendant, then the wife of the orator, refused to sign the deed of the farm to said Foster unless the stone store should be deeded to her and her heirs and assigns forever, and the orator should make certain additions to and improvement upon said stone store, requiring an outlay of about $800 ; that such repairs were unnecessary, and that by such refusal on the part of the defendant, he could not complete his contracts with said Foster and said Davis, and that thereby he would be in danger of being involved in numerous and expensive lawsuits, and be liable to pay large sums of money in damages and costs if he did not fulfill his said contracts with Foster and Davis, and that by reason of said defendant's right of homestead the orator could not give a good title unless the defendant signed said deed ; that said defendant assured the orator that if said stone store was deeded to her, the orator should have all the use and benefit thereof which he would have if the same was deeded directly to him ; and that the orator was forced to accept such proposition, and that said stone store, with its appurtenances, was deeded to the defendant ; that the orator paid for said premises, and the defendant paid nothing therefor. The bill also charged that in 1867 the defendant, to defraud the orator, took and carried away about twenty silver spoons and a gold chain, all of the value of sixty dollars; that at February term, 1869, before the supreme court in Windsor county, the defendant procured a divorce from the bonds of matrimony existing between her and the orator, and a small amount of personal property as alimony ; that the defendant refuses to give to the orator said spoons and chain, and refuses to convey said stone store to him, or to allow him to use or control it ;—and praying that the defendant be decreed to quit-claim to the orator said stone store and appurtenances, and to deliver up said spoons and chain, and for general relief.

The defendant answered the bill, and a large amount of testimony was taken on both sides. At the May term, 1871, of the

court of chancery, the cause was heard upon bill, answer, and testimony, and BARRETT, Chancellor, dismissed the bill with costs, for the reasons that from the evidence he was unable to find that in the arrangement between the parties, pursuant to which the stone store was conveyed to the defendant, there was any agreement or understanding that the orator was to or would have any other or different right to the possession and use of said store than such as he would be entitled to as tenant by the courtesy; that relation having been terminated by the divorce, his right to possession and use thereupon ceased; from which the orator appealed.

*Sewall Fullam* and *John F. Deane*, for the orator.

There can be no doubt that the general rule of law is, if one person buys land and pays for it, and takes a deed to another, such other person becomes the trustee of him from whom the consideration moved, and that he is the *cestui que trust*, to whom such trustee is accountable. *Porter* v. *Bank of Rutland et al.*, 19 Vt., 410; *Barron* v. *Barron et al.*, 24 Vt., 375; *Pinney* v. *Fellows et al.*, 15 Vt., 525; *Wallace* v. *Bowens*, 28 Vt., 638; *Clark, Adm'r*, v. *Clark*, 43 Vt., 685.

The same doctrine is laid down by Judge STORY, in his Equity Juris., vol. 2, §§ 1201, 2, 3 and 4, and notes, and the same is held in New Hampshire, Massachusetts, Connecticut, and New York, as well as in other States and in England. It is true that in this State, as well as others, it is held that where a father or husband buys land and takes a deed to his wife or child, the *prima facie* inference is, that it was intended for a gift; but this is liable to be rebutted and overcome by parol proof. *Wallace* v. *Bowens*, above cited; *Page* v. *Page*, 8 N. H., 187.

These homesteads are mere inchoate rights in the wife, or as Judge REDFIELD says in *Howe* v. *Adams*, 28 Vt., 544, "The homestead law does not vest any title in the wife of the householder, as to the homestead. It is at most but a negative which she has upon the conveyance."

In this case she would have had the same homestead right in the store she had in the farm, the price of the store having been paid from the sale of the farm. Gen. Stats., 456, §§ 5, 9.

Had the orator deeded his farm and procured another homestead and *occupied it as such*, this would have made the deed good. *Howe* v. *Adams*, above cited.

The death of the wife while her husband lived would have vested no right in her heirs to the homestead, and nothing could vest any right in the wife but the death of the husband, and then she takes it as a part of her dower. Gen. Stats., 457, § 6.

*T. O. Seaver* and *Gilbert A. Davis*, for the defendant.

It is well settled that a purchase by a husband in the name of his wife is, in the first instance, taken to be an advancement to the wife, and not a resulting trust. 1 Lead. Cas. Eq., 280, and cases cited ; *Whitten et als.* v. *Whitten*, 3 Cush., 197 ; *Walton* v. *Divine*, 20 Barb., 9 ; *Guthrie* v. *Gardner*, 19 Wend., 414 ; Hill on Trustees, 157–159, and cases cited ; *Jencks* v. *Alexander*, 11 Paige, 619 ; *Glaister* v. *Glaister*, 8 Vesey, 189 ; 2 Story's Eq. Juris., § 1204 ; *Wallace* v. *Bowens*, 28 Vt., 638.

No trust was created by the fact that the orator made improvements on his wife's land, in the absence of any express agreement that his money or labor expended thereon should vest in him any interest therein. *Webster* v. *Hildreth*, 33 Vt., 457.

We claim that the orator's testimony is inadmissible, and should not be weighed against the answer, so far as he undertakes to testify to conversations with the defendant *during coverture*. 1 Ph. Evidence, 78, note ; ib., 79 ; ib., 90, note ; 7 Vt., 506–537 ; 27 Vt., 308 ; Bishop on Marriage and Divorce, § 723. But the wife may testify in his favor if she do not object. *Dickerman* v. *Graves*, 6 Cush., 309.

A court of chancery has no jurisdiction of the controversy as to the *silver spoons* and *gold chain, because a full compensation may be obtained in damages,* and they are not shown to be of any peculiar value or importance. Story's Eq. Juris., §§ 708–709 ; *Smith* v. *Pettengill et al.*, 15 Vt., 84.

The spoons that were given to the defendant by her mother never became the orator's property. The plain intention was to vest the title in the daughter, for they were given as keepsakes. 1 Lead. Cas. Eq., 539 ; *Whitten* v. *Whitten*, 3 Cush., 199 ; *Por-*

*ter* v. *Bank of Rutland*, 19 Vt., 410. The gift of the chain to the wife, by the husband, will be upheld by a court of equity. *Whitten* v. *Whitten*, 3 Cush., 199; 1 Lead. Cas. Eq., 540; *Child* v. *Pearl*, 43 Vt., 224.

The opinion of the court was delivered by

Ross, J. No resulting trust in favor of the orator in the premises in controversy was created by his payment of the purchase money since the defendant was the wife of the orator at the time the conveyance was taken to her. Payment for premises by a husband, and a conveyance of the same to the wife, with no other facts shown, vests an absolute title to the premises in the wife. In such a case, the law, instead of presuming that the payment and conveyance was intended to be for the benefit of the husband, as it would if the conveyance had been taken to a stranger to the family relation, presumes the payment to have been made by him by way of an advancement, or as a gift to the wife, for the purpose of making provision for her future support. 1 Leading Cases in Equity 280, and cases cited; *Whitten et als.* v. *Whitten*, 3 Cushing, 197; *Wallace* v. *Bowens*, 28 Vt., 630. Hence to entitle the orator to a conveyance of the premises to himself from the defendant, he must fairly establish that, at the time he paid for the premises and took a conveyance thereof to the defendant, then his wife, it was mutually understood between them, and was their then intention and purpose, that the defendant should take the conveyance of and hold the title to the premises, not as the title to her own property, but as the title to the property of the orator. We fail to find such understanding, intention and purpose established by the testimony. From the orator's previous failure in business, and the consequent loss of most of the property which the defendant had received from her father's estate; from her refusal to sign the deed conveying away the farm, unless she could have a deed of the premises in controversy; from what took place between the parties at the time of the conveyance, and from the inquiries which they made of Mr. Deane in regard to the rights of the orator if the property was conveyed to the defend-

ant, we are satisfied the defendant desired the conveyance to her-self, that she might hold the property as her own beyond the con-trol of the orator, or the reach of his creditors, and that the orator then understood that such was her purpose and desire. The only thing it seems to us which has turned out differently from what the orator then expected is, that the defendant has since then sued out a libel for and obtained a divorce of the mar-riage relation then existing between them, and thus cut off what-ever rights and enjoyment of the property he might have had if she had continued to remain his wife. The orator has failed to establish a right to have the premises conveyed to himself.

The orator asks to have a certain number of silver spoons and a gold chain delivered to him by the defendant. A part of the spoons were a present, made by the orator to the defendant before their marriage, and a part of them were given to the defendant by her mother during the coverture. We find from the testimony that the defendant during the coverture had the control of and kept these spoons as her own separate property, and was allowed to do so by the orator. We also find that the gold chain was a gift from the orator to the defendant while she was his wife. The law is well settled in this State, that the husband may surrender to the wife the right to her personal property which the law gives him by reason of the marriage ; that he may do this by an *ante* nuptial contract to that effect, by allowing her to claim and con-trol for a long time property given her during the coverture as her separate property, and refraining to exercise the right which the law gives him to take from her such property and use it as his own, and by making gifts himself to the wife. The law does not deal in nonentities, and allow the husband to give a piece of property to the wife as her own one moment, that he may retake it to himself the next moment. When he makes a gift to his wife either before or after marriage, or allows her to hold and control property given her during the coverture as her own separate prop-erty, for a great length of time, and especially till a divorce is sought, as was done in this case, he thereby surrenders and waives the right, which the law confers on him as husband, but

for such surrender and waiver, to take the wife's personal prop-
erty, hold, and use it as his own.  *Albee, adm'r.*, v. *Cole*, 39 Vt.,
319 ;  *Child* v. *Pearl*, 43 Vt., 224, in which Judge BARRETT ably
collates and reviews the authorities on this subject.

The decree of the court of chancery dismissing the bill is af-
firmed.