## PETER PREMO AND HIS WIFE JULIA C. PREMO v. W. R. HEWITT.

### Exemption. Gift from Husband to Wife.

The husband owned a homestead and other property exempt from attachment. It was insured in the name of his wife. It burned; and the insurance money, with the knowledge and consent of the husband, was paid to her; and she, with his approbation, managed and treated it, and the property purchased with it, as her own. *Held,*

1. That it was equivalent to a valid gift.*
2. That property purchased with the insurance money was not attachable on the husband's debts;
3. Nor property purchased with the wife's earnings, when he has allowed her to use them as her separate estate;
4. Nor, the increase of such property, as of cows.
5. And the result is the same though the labor of the husband on the wife's farm may have helped to some extent to produce the property in contention.
6. R. L. s. 1075, earnings of married woman cannot be trusteed, construed.

REPLEVIN, to replevy ten cows, fourteen young cattle, two swine, one cart, one buggy, one plow, one sleigh, and one sled. Heard by the court, May Term, 1882, ROWELL, J., presiding. Judgment of guilty as to all the property replevied except the sled, and for the plaintiffs to recover one cent damages and costs; and of not guilty as to the sled, and for a return thereof, and for the defendant to recover one cent damages and costs; but it appearing that the costs were not enhanced by reason of replevying the sled with the other property, the defendant's costs were restricted to a nominal sum. On trial it appeared that on the 15th day of November, 1864, said Peter Premo purchased a farm and took a deed to himself; that he and his wife resided on the farm till April 18th, 1877, when the buildings were burned; that he had the entire management of affairs; that he got badly in debt, was sued, his personal property sold on execution save what was

---

* See *Robb* v. *Brewer*, 15 Reporter, 648, May 23, 1883, where the Supreme Court of Iowa held that a gift by a husband to his wife of his *earnings exempt from execution,* was not a fraud on his creditors; and property purchased by her, paid for, in part, by such earnings, was not attachable by his creditors, citing *Dreutzer* v. *Bell,* 11 Wis. 114; 23 Wis. 164; 44 Iowa, 613.—REP.

exempt ; that on the 26th day of October, 1875, one Smith having obtained a judgment levied his execution on all the said Premo's real estate, setting out the homestead as provided by law, which real estate was never redeemed ; that on the 8th day of September, 1875, said Peter Premo had the buildings and their contents insured in his own name for $2,078 ; that, after the set-off, the agent, through whom the first insurance had been effected, told the plaintiffs that the homestead belonged to Mrs. Premo, and should be insured in her name, whereupon the policy was surrendered and cancelled, and a new one issued to her, on her application, with the knowledge and consent of the husband ; that in the last policy the buildings were insured for only $1060, and other property, amounting in all to $1377 ; and that the debt for which this suit was brought, and the property attached, antedates the set-off of the homestead. The court found and the exceptions showed :

" On the 18th day of April, 1877, said property was destroyed by fire, except the barn and contents. On the 9th day of May, 1877, said Julia filled out her proof of loss and made oath to the same, in which she claimed insurance for loss of property in the sum of $1150, as follows : On house, $1000 ; on clothing, $150, which loss was finally adjusted by the company allowing on said policy, $1138.96, which was paid to said Julia, her husband assenting, less $8 allowed for interest and expenses. The title to said real estate remained in said Peter till the 25th day of March, 1878, when it was sold for the sum of $100, said Julia joining with said Peter in the deed.

" On the third day of October, 1877, said Julia purchased of Joel H. Willis his homestead farm in Bridgewater, which was deeded to said Julia by Willis and wife ; the consideration named in said deed was $2250. On the same third day of October, 1877, said Julia and Peter executed to said Willis and wife a mortgage deed for the sum of $1500, to secure the balance of the purchase money. Said Peter and wife soon moved on to said farm, where they have ever since lived, and of which the said Julia has had the management and control. At the time of the sale of said farm, as aforesaid, there was included seven calves, a quantity of hay and all sugar utensils on the place, for which said Willis and wife executed a bill of sale to said Julia. On the seventh day of August, said Julia purchased of Levi Premo, a brother of Peter, one two-horse wagon, one express wagon, (which is the one in controversy, and called a buggy,) and one square box sleigh, and paid for them out of the insurance money. At the time of this sale Levi Premo executed to said Julia a bill of sale of the articles sold.

" A short time after Premo and wife moved on to the Bridgewater farm, Peter Premo saw Geo. E. Smith at an auction, and inquired of him if he had any cows for sale. A short time after this Premo and wife came to Smith's; Smith and Premo went into the cattle yard, and examined the cattle. Mrs. Premo did not go into the yard, but sat in the car-

riage near by. Premo and his wife both talked with Smith about buying the cows, but Smith in fact traded with Mrs. Premo, and sold the cows to her. Smith preserved a lien on said four cows, which was signed by Mrs. Premo alone ; but being informed that a married woman could not contract in that way, Smith afterwards obtained the signature of Premo to it. Afterwards Smith sold two more cows to Mrs. Premo in the same manner. These were six of the cows replevied. Said cows have not yet been paid for. Three of the other cows came from these Smith cows, and one was of the seven calves bought with the farm. Of the young cattle, ten came from the Smith cows ; three of the young cattle Mrs. Premo bought when calves, and paid for in butter sold from the farm. She paid fifty cents each for them. The other she had of Richard Bradley and paid for in sewing. Mrs. Premo bought a pig of Richard Bradley for $2.50. She paid $1.50 in sewing and $1.00 in butter from the farm, and the hogs in question were raised on the farm from that pig. The cart was thrown in in an ox trade, which was paid for by turning out a note for $100, given to Mrs. Premo to pay for a pair of horses which she bought and paid for out of the insurance money and which she had sold, and by Mrs. Premo's giving her note for $25, which has since been paid. The plow Mrs. Premo bought in Rutland and has not paid for it.

" At the time of the purchase of the Bridgewater farm, neither Premo nor his wife had any money or property except the insurance money. The $750 paid in towards the farm, and all the personal property on the farm, came from the insurance money and accumulations since. Since the purchase of the Willis farm Premo and wife have lived thereon, but she has had the management and control thereof, though Premo has worked on it, but exercised no control over it. All he has done has been on the farm except he has occasionally worked a little at his trade of a wheelwright.

" At the time this property was attached by Hewitt on the Perry writ it was all on said Willis' farm, where Premo and wife were then living.

*       *       *       *       *       *       *       *

" That all the property thus insured to her was property that was by law exempt from attachment by the creditors of her husband ; that the money arising from the loss of that property by fire was paid to her by her husband's consent ; that she assumed and had control of the money and continued to control it ; that whatever she did in that direction, controlling that money, or buying property with it, she did with the double purpose of preventing her husband's creditors from getting the property and for the purpose of more surely obtaining a home for herself and family."

The property in contention was attached by defendant as an officer. The other facts are stated in the opinion of the court.

*Norman Paul*, for the defendant.

The wife has but an incohate lien upon the homestead. *Whitman* v. *Field*, 53 Vt. 554. The homestead exemption is limited in value to $500, and however liberal courts have been in construing statutes relating to the homestead right, they have no author-

ity to extend this statutory limit. When the plaintiffs purchased the Bridgewater farm, and paid the $750 towards the purchase price, and occupied the same, that became their homestead, and they could make no claim that any other money they possessed was exempt from attachment on the ground of the homestead right. R. L. s. 1894; *McClary* v. *Bixby*, 36 Vt. 254; *Keyes* v. *Rains*, 37 Vt. 260; *Executor of Doane* v. *Doane*, 46 Vt. 485; *Bugbee* v. *Bemis*, 50 Vt. 216.

The claim of ownership of the property in controversy made by the wife cannot be sustained; it is not property that she held in her own right, or that has come to her by devise or inheritance. 2 Bishop Married Women, ss. 135,136,137; Kerr F. Mistake, 196; *Crane* v. *Stickles*, 15 Vt. 252; *Prout* v. *Vaughan*, 52 Vt. 457. The husband, by virtue of his marital rights, is entitled to the wife's earnings during coverture, and all the property bought with such earnings is his. 2 Bishop Married Women, s. 82; Schouler Dom. Rel. 61, 75; 1 Parsons Con. 286; *Davis* v. *Burnham*, 27 Vt. 562.

*French & Southgate*, for the plaintiffs, contended substantially as held by the court; and cited, *Richardson* v. *Merrill's Est.* 32 Vt. 217; *Caldwell* v. *Renfrew*, 33 Vt. 213, 217; *Cardell* v. *Ryder*, 35 Vt. 47; *Richardson* v. *Wait*, 39 Vt. 535; *Child* v. *Pearl*, 43 Vt. 224; *Bent* v. *Bent*, 44 Vt. 555; *Perry* v. *Wheelock*, 49 Vt. 66; *Spooner* v. *Reynolds*, 50 Vt. 437; *Leavitt* v. *Jones*, 54 Vt. 426.

The opinion of the court was delivered by

Ross, J. The County Court have found that all the property insured to Mrs. Premo, both when insured and burned, was property that was exempt from attachment and levy of execution, on debts due her husband's creditors; that the insurance thereof was taken to Mrs. Premo, and the money arising from the loss thereof paid to her with the knowledge and consent of her husband; and that since its payment to her in 1877, she has, with the approbation of her husband, managed and treated it and the property purchased therewith as her sole and separate property. This is

equivalent to finding that the husband made a gift of the insurance policy and the money received thereon to her. Inasmuch as it was property which could not be taken by his creditors in satisfaction of his debts, the motive which induced him to make, and her to accept, the gift, does not concern them. The property being, as against them, set apart by law to furnish a home for the family, she had the right to receive it as a gift from her husband, with the intention and purpose of keeping and using it to furnish a home for the family, although the accomplishment of this end would operate and so become a part of her intention to keep it away from the creditors of her husband. The intention to keep the homestead and other exempt property from being taken by the creditors of the owner is, if not the intention, the direct operation of the statutes creating the exemptions. It cannot be unlawful for the wife to take as a gift such property, with the purpose to use and keep it just as the statute provides it may be used and kept. Such purpose no more withdraws it from the use of the creditors of the husband than does the statute itself. The right of the husband to give to the wife the avails arising from a sale of the homestead as against his creditors who had no right to take the homestead in satisfaction of their debts, has been fully recognized by this court in *Keyes* v. *Rines*, 37 Vt. 260, and *Morgan* v. *Stearns*, 41 Vt. 398.

But it is contended that the defendant should have returned to him that portion of the property which is found to have been purchased with the earnings of the wife. This contention is made on the ground that, at common law, the earnings of the wife belong to the husband. By our statute (R. L. s. 1075,) the earnings of the wife are not subject to be taken by creditors of the husband in satisfaction of their debts. The husband may, therefore, give these to the wife, and work no wrong or fraud upon his creditors. When he allows her to take and use her personal earnings to purchase property for herself, he in effect makes a gift thereof to her, and the property so purchased becomes the separate property of the wife. From the very nature of the transaction the husband relinquishes all marital rights over property which he himself

gives to the wife to hold as her separate estate. *Bent* v. *Bent*, 44 Vt. 555.

It is further contended that the labor of the husband since the purchase by the wife of the farm in Bridgewater has helped to produce the property in contention. This may be true to some extent. However it may be morally, legally a man is not bound to work to pay off his creditors. They have no legal power to compel him to work for them or the payment of their debts, nor power to attach or appropriate to the payment of their debts his future earnings. R. L. s. 1075. He has the right to work upon the wife's land, and thereby increase its value, and such increase can be reached neither at law nor in equity. *Pierce* v. *Pierce Est.*, 25 Vt. 511 ; *White* v. *Hildreth*, 32 Vt. 265 ; *Webster* v. *Hildreth*, 33 Vt. 457.

The judgment of the County Court is affirmed.