### WITTERS v. SOWLES.

*(Circuit Court, D. Vermont. April 17, 1889.)*

CORPORATIONS—STOCKHOLDERS—MARRIED WOMEN.

    In Vermont, a married woman is competent to become a stockholder in a corporation and to contract to charge her separate property with the payment of any liability which is implied from entering into that relation.[1]

    At Law. On motion for a new trial.

    Action by Chester W. Witters, receiver, against Margaret A. Sowles, to enforce defendant's liability as a stockholder in the First National Bank of St. Albans. Verdict for plaintiff, and defendant moves for a new trial.

    *Albert P. Cross*, for plaintiff.

    *E. A. Sowles*, for defendant.

    Before WALLACE and WHEELER, JJ.

    WALLACE, J. This is a motion by the defendant for a new trial in an action at law. The action is brought against the defendant as a shareholder of the First National Bank of St. Albans, Vt., to recover an assessment made by the comptroller of the currency in winding up the bank in insolvency, for an amount equal to the par value of the shares. The defendant is a married woman, and was residuary legatee under the will of Susan B. Bellows, and her husband was the sole executor of the will. In March, 1881, the proper probate court decreed the distribution of the estate, and the next day the defendant's husband, as executor, transferred to her upon the books of the bank, in accordance with its by-laws, 400 shares of the stock of the bank, part of the estate. These shares stood in her name on the books of the bank until April, 1884, when the bank failed. The dividends were always paid to her husband. The question of fact litigated upon the trial was whether the defendant was aware before the failure of the bank that the shares had been transferred to her. The judge instructed the jury, in substance, that if the defendant was informed of the transfer of the stock to her by her husband as executor, and acquiesced in it, or if she left the management of her property to her husband, and he treated the shares as hers, she was a shareholder; and he ruled as matter of law that if the jury found she was a shareholder she was liable for the amount of the assessment in an action at law, although a *feme covert*. The question of the liability of a married woman to an assessment upon shares standing in her name has been fully considered by Judge WHEELER, before whom this action was tried, in previous litigations between the parties. 32 Fed. Rep. 130, 767, 35 Fed. Rep. 641. His conclusion was that the defendant was liable to an assessment; but in an action brought on the equity side of the

---

[1] Concerning the power of married women to contract under the various "married women's acts," see Flaum v. Wallace, (N. C.) 9 S. E. Rep. 567, and note; Jones v. Holt, (N. H.) 15 Atl. Rep. 214, and note.

court he sustained the demurrer of the defendant to the bill, upon the ground assigned by the demurrer, that the remedy was not in equity, but was exclusively at law. As those cases were decided by him in the circuit court upon deliberate consideration, while sitting alone, they would now be treated as the law of the court until reversed by the supreme court were it not that he has requested the further examination and review of the main question upon this motion. It is too late, however, to re-examine with propriety the question whether the defendant is liable at law. Having succeeded in the previous suit in equity upon the ground then taken by her that the remedy to enforce the liability was solely at law, it would be indecent to permit her, now that the plaintiff has brought his suit at law, to urge that she can only be sued in equity. If that question was correctly decided in the former case the ruling upon it at the trial was right; if the former decision was erroneous, it should be followed as the law of this court, as between the present parties, until it may be reversed by the supreme court.

The defendant insists that by the law of Vermont, at the time the cause of action accrued, a married woman was incapable of making a contract, and could not assume the liability of a shareholder of a national bank, and hence she is not affected by the provisions of section 5151, Rev. St. U. S., which make shareholders individually responsible, to the extent of their stock, for the debts and engagements of the bank. This proposition involves primarily a question of statutory interpretation. The term "shareholder" in the statute—there being nothing in the section or its context to indicate that it was used in a different sense—is to be considered as used in its ordinary legal signification, and therefore intended to describe a class of persons who occupy the *status* and relation of members towards the corporation, and of contributories towards creditors. The statute does not set up any criterion or indulge in any definition by which to ascertain what persons fall within the designated class, but leaves that inquiry to be ascertained *aliunde* and determined by the rules of law which are always invoked when the question arises whether a given person who claims or is claimed to be a shareholder has assumed or then sustains that relation. In the language of a recent commentator: "In determining who is a shareholder or stockholder or member within the meaning of a provision of this description, the same principles and the same rules apply as in determining who is liable to contribute, as a shareholder, to the capital stock of the company." Mor. Priv. Corp. § 614. In those states where the common-law disabilities of coverture have been so relaxed by statute that married women may acquire and hold separate property and contract in respect to it as though unmarried, there is no legal obstacle to prevent a married woman from becoming a shareholder of a corporation, and assuming all the liabilities incident to that relation. This has recently been decided by the supreme court in the case of *Bundy* v. *Cocke,* 128 U. S. 185, 9 Sup. Ct. Rep. 242. In that case a bill in equity was filed to enforce such a liability against a married woman, and the court held that she was liable. The present case, however, turns upon the capacity of a married

woman to assume the relation of a shareholder in the absence of such enabling acts. The statutes which have been enacted in Vermont concededly do not touch the present case. The question is therefore one of the defendant's capacity by the rules of the common law as recognized and adopted in Vermont. At common law a married woman cannot make a valid contract of any description in relation to either real or personal property; and marriage operates as a gift to the husband of all the personal property of the wife, both such as is hers at the time or such as subsequently accrues to her. As to choses in action, including shares of stock, she may retain a qualified property in them; and they remain hers until reduced to possession by the husband, and, if he dies without having done so, they are hers by survivorship. She cannot transfer them during his life. No decision of the courts of Vermont has been cited in which the question of the competency of a married woman to become a shareholder of a corporation has been considered. Two adjudications in other states, by courts of last resort, are reported, in which it was held that, notwithstanding the existence of the common-law disabilities, a married woman who has shares in a corporation standing in her name, not reduced by the husband to his possession, is a shareholder within the meaning of statutes making shareholders liable for the debts. *In re Bank*, 22 N. Y. 9; *Sayles* v. *Bates*, 15 R. I. 342, 5 Atl. Rep. 497. In the first of these cases, it was assumed, without much consideration, that the married woman was a shareholder because of her undivested property in the shares, and the decision was placed upon the ground that, being a shareholder, she was liable by the terms of the statute. In the second case the decision was placed upon the authority of the first, and the court said:

"If a married woman is capable of becoming a stockholder, which is not questioned, she becomes subject to the liability by force of the statute, not by contract, when she becomes a stockholder."

These decisions are entitled to great respect, but they seem to ignore the contractual character of the relation and the liability. Doubtless it would be competent for the legislature to declare that any married woman who might acquire shares in a corporation should be regarded as a stockholder, and should be liable as such, notwithstanding her shares might be the absolute property of the husband, at his option; but, in the absence of language to that effect, a statute which makes shareholders liable for the debts of the corporation must be presumed to include only persons belonging to the class who can contract that relation towards the corporation and creditors. The relation is a contractual one, and the liability is founded on the presumed assent of the shareholder to be bound by the terms of the organic law of the corporation. This is well stated by ALLEN, J., in *Lowry* v. *Inman*, 46 N. Y. 125:

"A personal liability of stockholders for the debts of a corporation, in virtue of the charter, is not in the nature of a penalty or forfeiture, and does not exist solely as a liability imposed by statute. It is not enforced simply as a statutory obligation, but is regarded as voluntarily assumed by the act of becoming a stockholder. By such act he assents to be bound, or that his

property shall be charged, with the debts of the corporation, to the extent and in the manner prescribed by the act of incorporation."

In *Ireland* v. *Turnpike Co.*, 19 Ohio St. 372, the court say:

"He becomes a stockholder by virtue of a contract with the company, and he has a right to stand upon the terms of that contract, interpreted and limited by the laws under which it was made."

The nature of the liability is considered by the supreme court in *Carrol* v. *Green*, 92 U. S. 509, in a case where the question was whether an action against a stockholder, under a statute making stockholders liable for the debts of the company to a limited amount, was "grounded upon contract," so as to be barred by the statute of limitations; and the court held that it was. Speaking of the assent of the shareholder to be bound by the terms of the statute of incorporation, evidenced by taking stock, the court said:

"The assent thus given, and the promise implied, are of the essence of the liability sought to be enforced in this proceeding."

To the same effect are the following adjudications: *Corning* v. *McCullough*, 1 N. Y. 47; *Hawthorne* v. *Calef*, 2 Wall. 10; *Norris* v. *Wrenschall*, 34 Md. 492; *Erickson* v. *Nesmith*, 46 N. H. 371; *Coleman* v. *White*, 14 Wis. 700. It does not follow that because a married woman may have at common law a qualified property in the shares of a corporation which have not been reduced to the possession of her husband she may therefore become a shareholder. A person can become a shareholder in only one of two ways,—by original subscription for shares, or by a transfer which operates as a novation, and substitutes the transferee in the place of, and subjects him to the liabilities of, the original subscriber, and releases the latter from all further liability on his contract. A married woman, under the common-law disabilities, cannot be a competent party to either form of the contractual relation thus created. "A *feme covert* cannot sustain the character of partner, because she is legally incapable of entering into the contract of partnership; and although married women are not unfrequently entitled to shares in banking houses and other mercantile concerns, under positive covenants, yet, where this happens, their husbands are entitled to such shares, and become partners in their stead." Colly. Partn. § 14. Her incapacity to enter into the relation of a shareholder is manifest because a transfer of shares to her, like the transfer to an infant, does not discharge the transferrer from the obligations of a shareholder, and because she cannot transfer them and substitute another by her act in the place of the original shareholder. Many cases are found in the books where transfers of shares to infants have been treated as ineffectual to relieve the transferrer from liability as a shareholder, upon the ground that a transfer to one incapable of taking is void as to creditors and the company. Thus it has been held that, because a transfer to an infant is voidable by the company until ratified by the infant upon attaining his majority, if the company is wound up before that time the transferrer is liable as a contributory, even when he acted in good faith, and in ignorance of the infancy of the transferee. *Mann's*

*Case*, L. R. 3 Ch. 459; *Weston's Case*, L. R. 5 Ch. 614; *Nickalls* v. *Merry*, L. R. 7 H. L. 530; *Ruchizky* v. *De Haven*, 97 Pa. St. 202; *Roman* v. *Fry*, 5 J. J. Marsh. 634. Yet, unlike a married woman, the infant can transfer his shares to another; and when he does this to one who is competent to become a shareholder his title passes, as against the corporation, and the original shareholder is absolved from further liability. *Gooch's Case*, L. R. 8 Ch. 266. The shares of the married woman must be transferred by her husband, if transferred at all; and if he has reduced them to possession by allowing them to stand in his name he is liable to contribute as a shareholder to the payment of the debts of the corporation, whether they belong to her at the time of the marriage, or whether she subsequently acquired them. *Burlinson's Case*, 3 De Gex & S. 18; *Sadler's Case*, Id. 36; *White's Case*, Id. 157; *Thomas* v. *Bank*, 6 Ct. Sess. Cas. 607. Unless the proposition can be maintained that a person can occupy the *status* of a shareholder, who cannot make a contract of purchase or sale, whose acquisition of the shares does not absolve the prior holder from the obligations of a shareholder, who cannot receipt for the dividends, and who cannot transfer the shares to another, a married woman cannot at common law become a shareholder. In the case of *Bundy* v. *Cocke*, *supra*, the court was careful to put the married woman's liability on the ground that the enabling acts of the state whose laws controlled the question had removed her common-law disability. The modifications in Vermont of the common-law doctrine of the capacity of married women to acquire and enjoy separate property, evinced by the decisions of the highest court of the state, are quite radical, and would seem to remove any question of capacity to become a stockholder in that state. In *Caldwell* v. *Renfrew*, 33 Vt. 213, the supreme court held that, where both husband and wife have always treated money and notes belonging to her before or accruing to her after marriage as her separate estate, her right to hold and dispose of them will be recognized and protected by courts of law as well as in equity. In *Child* v. *Pearl*, 43 Vt. 224, the court, referring to several previous decisions, state their result as follows:

"In these cases the legal title of the wife was recognized in a court of law as existing against the effect of coverture by reason of an understanding between the husband and wife after marriage, rather implied than expressed, that certain property which would otherwise belong to the husband should remain and be the sole and separate property of the wife."

In that case the court held, the wife being divorced, that she could maintain trover for such property against one who had purchased it from the husband. In *Premo* v. *Hewitt*, 55 Vt. 362, the court held that the wife acquired the legal title to property purchased by her with moneys of the husband, which were paid to her with his consent, he having treated the property so purchased as her own, and could maintain trover against an execution creditor of the husband who had seized it. Many other cases decided by the supreme court recognize the law to be that whatever property the wife acquires during marriage, either by gift from the husband, or from third persons, which she is allowed by his consent,

express or implied, to hold and treat as her own, is her sole and separate property, both at law and in equity. The doctrine established by the authorities is expressed in *Bent* v. *Bent*, 44 Vt. 555, by the language of Ross, J., as follows:

"The law is well settled in this state that the husband may surrender to the wife the right to her personal property, which the law gives him by reason of the marriage; that he may do this by an antenuptial contract to that effect, by allowing her to claim and control for a long time property given her during the coverture as her separate property, and refraining to exercise the right which the law gives him to take from her such property and use it as his own, and by making gifts himself to the wife."

In the present case the husband, as executor, instead of transferring the shares to himself individually, transferred them to his wife. By that act he manifested his intention not to reduce the choses in action to his own possession, and his consent that the defendant might hold and enjoy them as her own property. She thereby acquired the legal title to the stock by the law of Vermont, according to the decisions of the highest courts of the state. Consequently she became a stockholder of the corporation in every sense of the term. In those states where the title of a married woman to her separate property is only recognized in equity, her capacity to take and hold it comprehends the power to charge it for her debts, and to alienate it; and she can charge it for a debt, or the fulfillment of a contract, either in writing or by parol, manifesting her intention to do so. According to the weight of authority express words are not necessary to create the charge. As is stated by Mr. Bishop (1 Bish. Mar. Wom. § 862:)

"The law will presume honesty and fair dealing, and not scoundrelism and fraud. Therefore, if a married woman having a separate estate contracts a debt, not on her husband's account, but on her own, and is silent on the question whether or not she means it to be a charge on her separate estate, the law should presume the latter, rather than presume an intention to cheat the other party to the contract."

This, in substance, is the doctrine declared by Lord Justice TURNER, in a very careful opinion, in *Johnson* v. *Gallagher*, 3 De Gex, F. &. J. 494. Equity recognizes a married woman's debt, and charges it upon her separate estate, not on the ground that the contract itself is an appointment or charge, but because, when contracted on the credit of the separate estate, or for its benefit, or that of the woman, it is just that the estate should answer it. *Yale* v. *Dederer*, 18 N. Y. 265. In Vermont, in order to charge her separate estate, it must be shown that the debt for the payment of which the promise was made went to the benefit of her separate estate, or for her benefit on the credit of such estate. *Sargeant* v. *French*, 54 Vt. 384; *Southworth* v. *Kimball*, 58 Vt. 337, 339, 2 Atl. Rep. 120. It must be concluded, therefore, that in Vermont it is competent for a married woman to become a stockholder in a corporation, and to contract to charge her separate property with the payment of any liability which is implied from entering into that relation. In England, such a liability was enforced in *Luard's Case*, 1 De Gex, F. & J. 533, and in *Re Leeds Banking Co.*, L. R. 3 Eq. 781. There is no reason why

the defendant should not be held for the liability sought to be enforced in the present case, the same as though the common-law disability to acquire separate estate, enjoy it, and contract with respect to it, had been removed by the statute. There is so little merit in the objections raised to the admission of evidence upon the trial, and in the criticisms upon the other rulings of the court at the trial, that they do not require special consideration. The motion for a new trial should be denied.

WHEELER, J. The principal question upon the motion is whether the *feme* defendant is liable as a shareholder for an assessment upon shares in the national bank of which the plaintiff is receiver, standing on the books in her name. By the common law of Vermont, married women could become shareholders in a national bank, as is abundantly shown in the foregoing opinion. They could as well enter into and occupy that relation as if empowered thereto by express statute. They could not there bind themselves personally by an ordinary contract. *Ingram* v. *Nedd*, 44 Vt. 462. The statutes of the United States provide, however, that the shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association to a certain prescribed extent. Rev. St. U. S. § 5151. Married women are included by this statute whenever, by law, they have become such shareholders. *Bundy* v. *Cocke*, 128 U. S. 185, 9 Sup. Ct. Rep. 242. They do not themselves make the contracts, incur the debts, nor enter into the engagements to which they are so held. The bank creates its own liability. The statute annexes the obligations of the shareholders to it by its own force. Without the statute, none of them would be liable; with it, all are holden. *Richmond* v. *Irons*, 121 U. S. 27, 7 Sup. Ct. Rep. 788. The disability of coverture would not stand in the way of this force. The statute itself, with the common law of the state, would remove all of that. Such an obligation of a married woman, arising under the law of the United States, could be enforced by an action at law in Vermont, as a contract under the laws of Massachusetts which would not have been valid in Vermont, was in *Holmes* v. *Reynolds*, 55 Vt. 39. Her separate property could be taken on the execution to satisfy the judgment. *Fox* v. *Hatch*, 14 Vt. 340. Thus her liability appears to have been fixed, and the remedy adequate. I concur fully in the conclusion reached, that the motion should be overruled.